(Reap. Dec. 10138)

JOHN V. CARR & SON, INC. *v.* UNITED STATES

Entry No. 7743.

(Decided January 9, 1962)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, and *Daniel I. Auster*, trial attorneys), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of the values found by the appraiser on certain metal parts used in the manufacture of antivibration mounts for automobiles, which parts were exported from Canada on or about October 6, 1958.

The manufacturer and exporter of the parts was Clevite, Ltd., St. Thomas, Ontario, Canada, and the actual importer and ultimate consignee of the merchandise was Clevite Harris Products, Inc., Milan, Ohio. The plaintiff herein was the custom broker of the importer.

It was agreed that the exporter and the importer are both wholly owned subsidiaries of Clevite Corp., Cleveland, Ohio, and that some of the officers and directors of the parent corporation are also officers and directors of the exporter.

It was further agreed that the merchandise in question is not specified on the final list, caused to be published by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956 (70 Stat. 943, 91 Treas. Dec. 295, T.D. 54165; 93 Treas. Dec. 14, T.D. 54521). Consequently, the provisions of section 402 of the Tariff Act of 1930, as amended by the said Customs Simplification Act, are applicable in the valuation of the merchandise.

The imported parts were entered at the invoiced values, which are claimed by the plaintiff to represent export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. They were appraised at higher values on the basis of constructed value, as defined in section 402(d) of the said act, as so amended. The statutory definitions of these values are set forth in the margin.[1]

The plaintiff claims, first, that export value, as so defined, is the proper basis for the determination of the values of the merchandise and that such values are the invoiced and entered values. Alternatively, plaintiff claims that constructed value, as so defined, is the proper basis for the determination of the values of the merchandise

---

[1] (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

 (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

 (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

 (3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

and that such values are the invoiced and entered values when converted from United States to Canadian currency.

The defendant contends that plaintiff has failed to establish export values for the merchandise, within the quoted definition; that the record evidence affirmatively establishes that the selling prices of the merchandise at bar, which are the invoiced and entered values, are not prices which fairly reflected the market value of the merchandise, within the meaning of section 402(f) (1) (B) of the act; that, consequently, a finding of export value for the merchandise cannot be made; and that the appraised values accurately represent the statutory constructed value.

It is to be noted that both parties have disregarded section 402(c) of the tariff act, as amended, defining United States value as a basis for the valuation of the merchandise.

The first question to be determined, therefore, is whether an export value, within the meaning of the statute, existed, and, if so, what that value was. The evidence relating to this matter may be summarized as follows:

The exporter was the only manufacturer in Canada of parts for antivibration mounts such as or similar to the parts here involved. It primarily produced such parts for its own use in the manufacture of antivibration mounts, but it also sold such merchandise for home consumption in Canada and for exportation to the United States. Its only United States customer at the time of exportation of the merchandise in issue was the importer of the merchandise at bar.

The principal business of the importer was the production and sale in the United States of antivibration mounts made with the use of parts such as or similar to those in issue. At the time of exportation here involved, such parts were purchased by the importer from United States suppliers as well as from the exporter.

The transaction represented by the present importation was one of a series entered into between the exporter and the importer beginning some 3 months previously, and all under the same conditions and practices as existed in connection with the importation at bar. The prices at which the merchandise was sold were the result of negotiations, and there is testimony that they represented the highest prices the importer would pay for the parts and the lowest prices that the exporter would accept for them. The record indicates a normal buying and selling relationship between the exporter and the importer and shows that neither the parent corporation nor the importer dictated the prices. Further, it shows that the prices did not vary with the quantity sold, and there were no restrictions as to the disposition or use of the merchandise by the purchaser.

The point at which the parties actually differ in the approach to the question of whether or not an export value, within the meaning

of the statute, existed for the merchandise at bar is concerned with whether the prices at which the merchandise was sold "fairly reflects the market value of the merchandise." One of the elements of the definition of export value is that the merchandise be "freely sold or, in the absence of sales, offered for sale." This term is defined in section 402(f)(1) as follows:

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold, or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser * * *.

Inasmuch as the record evidence establishes that the merchandise was sold without restrictions as to the disposition or use thereof and that, at the time of exportation, the only purchaser for exportation to the United States of parts such as those at bar was the importer, it would appear that the real question at issue is whether, under section 402(f)(1)(B), *supra*, the selling price fairly reflected the market value of the merchandise.

For the plaintiff, it is urged that that condition was met because the evidence shows (1) that the transaction was an outright purchase and sale between the exporter and the importer; (2) that the selling prices were arrived at by negotiation; (3) that neither the buyer nor the common parent corporation in any way dictated the prices; (4) that the purchase prices were competitive with prices for similar parts charged by United States manufacturers; (5) that the exporter would have been willing to sell identical merchandise at wholesale to other purchasers in the United States at the same prices; (6) that the selling prices were high enough to include the cost of production of such merchandise for export sale, plus a profit; and (7) that, subsequent to the transaction here involved, the exporter obtained orders from at least one other customer in the United States at exactly the same prices paid by the importer herein.

While neither the truth nor the legal effect of any of the foregoing elements is conceded by the defendant, the only point developed in its brief as establishing a lack of export value, within the meaning of the statute, is concerned with element (6), that is to say, that the selling price of the merchandise for exportation to the United States was high enough to include the cost of production of the merchandise, plus a profit. The defendant contends that, on the contrary, the evidence shows that the merchandise was sold for exportation to the United States at less than it cost to produce it in Canada, and

that, consequently, the selling prices did not reflect the fair market value of the merchandise.

This dispute centers about the following situation as revealed by the record evidence: As has been noted, the principal business of the exporter was the production and sale of antivibration mounts, and it produced parts such as those here in issue in connection with that principal business. However, it did sell such parts to other companies in Canada who also made antivibration mounts with their use, as well as to the importer, who made the same use of them.

In calculating the cost of producing the parts in question, the exporter used two separate bases, denominated "Canadian Cost" and "Export Cost." It allocated to the cost of its Canadian operations (i.e., the production of parts for use in its own business of making antivibration mounts and the sale of such parts to its Canadian customers) *all* of the costs incurred in producing, for example, 1,000 units, including material, direct labor, shipping containers, a scrap loss of 2 per centum, and overhead. Included in the Canadian operations overhead were taxes, depreciation, insurance, indirect labor (e.g., foremen paid a fixed salary), administrative salaries, office supplies, stationery, and selling and engineering expenses.

It allocated to the cost of export operations, that is to say, sales for exportation to the United States, all of the costs of materials, direct labor, shipping containers, and scrap loss, but only a portion of the overhead. Among the items eliminated from overhead under export cost calculations were what are called "fixed" costs, such as taxes, insurance, depreciation, indirect labor, and part of the administrative expenses enumerated above.

Consequently, the cost of production, calculated on this basis, for exportation to the United States was less than the cost of production for the Canadian operations, and, in the case of the merchandise at bar, was less than the selling price for exportation to the United States, thus showing a profit on the export operations.

On the part of the defendant, it is urged that the elimination of the "fixed" costs is improper and establishes that the selling prices to the United States did not fairly reflect the market value of the merchandise.

On the plaintiff's part, such method of calculating costs is defended on the ground that the fixed costs had already been incurred in connection with the Canadian operations for home consumption and had been absorbed by them; that the production of additional products for export did not incur any additional fixed costs; and that such method of calculating selling prices and costs accords with sound accounting practice.

It is not inconceivable that, under some circumstances, evidence that merchandise was being sold at less than its cost to produce might tend

to establish that the selling price did not fairly reflect its market value. This, however, is not the situation revealed by the evidence in this case.

It must be remembered that the exporter was itself primarily a manufacturer of antivibration mounts made with the use of parts such as those here involved. Whether or not it made any sales for export, it would incur, in producing such parts for itself, fixed and unvarying items of expense, such as taxes, insurance, depreciation, etc., properly attributable to that primary phase of its business. These fixed costs would not increase because of the production of additional parts for export sale, and I see no impropriety in the adoption of export selling prices based upon cost calculations from which they have been eliminated which would bar a finding of export value on the ground that such prices did not fairly reflect the market value of the merchandise.

That such practice was realistic from a commercial standpoint is demonstrated by the fact that the evidence shows that the export selling prices were competitive with the prices charged by American firms for the same components, the difference being within less than a dollar per thousand units.

I am satisfied that the record evidence supports the contentions made by the plaintiff with respect to the existence and amount of export value, and, accordingly, I find as facts:

(1) That the merchandise consists of metal parts for antivibration mounts, exported on or about October 6, 1958, by Clevite, Ltd., of St. Thomas, Ontario, Canada, and imported by Clevite Harris Products, Inc., of Milan, Ohio.

(2) That the said merchandise is not specified in the final list, T.D. 54521, published by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956.

(3) That appraisement was made on the basis of constructed value, which is defined in section 402(d) of the Tariff Act of 1930, as amended by the said Customs Simplification Act.

(4) That, at the time of exportation of the involved merchandise, the exporter was the sole producer and exporter of such or similar merchandise in Canada, and St. Thomas, Ontario, was the principal market in Canada for the sale of said merchandise.

(5) That, at the said time, the importer was a purchaser at wholesale for industrial use.

(6) That, at the said time, the price of the merchandise did not vary by reason of the quantity sold.

(7) That, at the said time, said merchandise was sold without restrictions as to disposition or use.

(8)  That the merchandise undergoing appraisement was sold under the conditions and practices which, for a reasonable time prior to the exportation thereof, had been normal in the trade involved with respect to merchandise of the same class or kind.

(9)  That the invoiced and entered prices of the involved merchandise were the prices at which it was sold.

(10)  That the said invoiced and entered values fairly reflected the market value of the merchandise.

(11)  That the said invoiced and entered values were the prices, at the time of exportation thereof, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Canada, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

I conclude as matters of law:

(1)  That export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise, and

(2)  That such value is the invoiced and entered value for each item.