(Reap. Dec. 9812)

RUSTAM K. KERMANI Co. *v.* UNITED STATES

Entry No. 74534, etc.

(Decided October 20, 1960)

*John D. Rode* for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

WILSON, Judge: These appeals for reappraisement involved the value, for duty purposes, of certain Oriental rugs known as Kermans, exported from Iran during the period from June 1951 to August

1957. The rugs in question are of three qualities, namely, 35/70, 37/75, and 40/80, indicating the number of stitches per square inch.

The rugs were invoiced in rials per piece, or per zar, which price included all charges, both dutiable and nondutiable. It appears that a zar is approximately 7 feet depending upon the stitch count. The merchandise was entered at the invoiced values, less the nondutiable charges, and was appraised at various prices, in most cases on a per square foot net packed basis, and in other cases at the invoice units, plus certain charges.

It was stipulated between counsel for the respective parties that there was no foreign value for such or similar merchandise (R. 6–7). The merchandise was appraised on the basis of export value (section 402(d) of the Tariff Act of 1930) of similar merchandise.

The plaintiff in the case at bar contends that the proper dutiable value for the involved merchandise is represented by the entered value in each case, maintaining that the invoiced prices represent the freely offered prices for such or similar merchandise on the various dates of exportation by the same or different exporters. The defendant, on the other hand, maintains that on or about the dates of exportation, such rugs were not freely offered for sale to all purchasers in the principal markets in Iran in usual wholesale quantities and in the ordinary course of trade for export to the United States, but that similar rugs were so offered for export to the United States at values represented by the appraised values herein.

Three witnesses testified for the plaintiff and the defendant called two witnesses to testify on its behalf. There were further introduced in evidence three documentary exhibits, plaintiff's collective exhibit 1, an affidavit of Khosrow Sorooshian, a dealer in Oriental rugs, who, it appears, had personally purchased the rugs at bar for and on behalf of Rustam K. Kermani Co. from the persons named on the invoices; defendant's collective exhibit B, an unsigned letter addressed apparently to the importer herein, which the record indicates was sent to plaintiff's witness Kermani, owner of the importing concern, by his cousin (R. 51), disclosing therein certain details relative to manufacturing costs of carpets in the country of exportation; defendant's exhibit C, a list identifying certain rugs belonging to the importer herein which were consigned to Tadross Brothers, importer of Persian and Chinese rugs, New York City.

Mr. Rustam K. Kermani testified that he was the owner of the importing company herein and that he has been in the business of manufacturing and importing Oriental rugs since 1927; that he was familiar with the various kinds and types of Oriental rugs dealt in in Iran, having bought and sold rugs in that country; that he personally had made Oriental rugs off and on over a period of 8 years; and that he had dealt in many kinds of rugs, including Kermans

(R. 7–11). Mr. Kermani further testified that the rugs here involved were all Kermans, of three main qualities, namely, 40/80, 35/70, and 37/75, the numbers signifying "the stitches in the back of the rug"; that each of these main classes have rugs of varying quality within that class (R. 13, 18). Plaintiff's witness identified a certain Khosrow Sorooshian as the person employed by him for many years to purchase rugs on his behalf, stating, in this connection, that the items of commission appearing on the invoices were the amounts paid Sorooshian for purchasing these rugs for him (R. 19, 21).

Mr. Kermani further testified that the rugs involved, all of which were handwoven, were purchased from many sellers, as appears on the invoices herein, and that anywhere from two to a dozen rugs were purchased from any individual seller; that all such rugs were entirely different, there being as many qualities as there were makers (R. 20) ; that even the same maker or seller would not always make the same quality. The witness further stated that other Kerman rugs of these three main numbers but of varying qualities were offered to him by manufacturers such as those listed on the invoices herein.

With respect to the prices paid for the involved rugs, Mr. Kermani testified that there was no change in the market value for such rugs between the date they were purchased and the date that any of the particular shipments were imported, and stated, further, that the market price or the value of the involved rugs as stated on the respective invoices herein represented the correct market value for the merchandise on the dates of exportation (R. 24–25).

Plaintiff's witness testified further that during the same period other Kerman rugs were offered to him at higher prices, and that, as compared to the imported rugs, the ones so offered had a much heavier pile, the design was more practical to the American taste, the color was much softer, and that the imported rugs were cheaper than those other type rugs.

On cross-examination, Mr. Kermani testified that the actual makers of the involved rugs manufacture and sell such or similar rugs to everybody in the ordinary course of trade for exportation to the United States (R. 57). Subsequently, the witness testified that he did not have any knowledge as to how other manufacturers or sellers or exporters of merchandise similar to that imported offered their merchandise to the United States (R. 61). The witness agreed that all rugs somewhat differ from one another, and that while such rugs might be similar, they would not be identical (R. 63). He further stated that the plaintiff herein was the exclusive purchaser from the exporter of the involved goods during the periods in question (R. 67). On redirect examination, Mr. Kermani testified that Mr. Sorooshian, the exporter of the involved merchandise, purchased the rugs in ques-

tion, as his agent, from the various manufacturers named on the invoices herein (R. 74).

The plaintiff also called as witness two examiners of merchandise who had appraised the merchandise here under consideration. Mainly, their testimony was directed to showing the prices at which the various rugs covering various prices were appraised. The record discloses that, in some cases, all three qualities were appraised at the one price; that, in some cases, quality 37/75 was appraised at the same price as quality 40/80; whereas quality 35/70 on the same shipment was separately appraised at a different price; that, in other cases, qualities 35/70 and 37/75 were appraised at the one price, whereas, on the same invoice, quality 40/80 was appraised at a different price. It further appears that, in seven out of nine invoices, all of the rugs for any one quality were appraised at a single price, notwithstanding the fact that the invoice in the particular case reflected many different prices for the many different rugs of such quality on that same invoice. In certain instances, appraisement of the merchandise was made at the invoiced unit value, plus 10 per centum, plus certain charges, and, in another case, the appraiser accepted the invoice unit price, plus the addition of 15 per centum, plus charges. In the above connection, although no detailed explanation was advanced for the varied appraisements, as summarized above, the Government Examiner Kahn testified that he ascertained that the rugs before him for appraisement were specially manufactured for the importer herein and that, for that reason, he compared other merchandise from other importers of similar merchandise and adopted their prices as those prevailing on the respective dates of exportation (R. 96).

The affidavit of Khosrow Sorooshian (Serushian), plaintiff's collective exhibit 1, recites that deponent has been in the Oriental rug business for more than 45 years and that, in such connection, he had dealt with buyers, sellers, weavers, and dealers, and that he was thoroughly familiar with the manufacture of Oriental rugs, more specifically, that he was personally familiar with the rugs at bar and with market conditions prevailing in the country of exportation on or about the date of exportation of the involved rugs. The affiant further stated that the involved rugs were of three qualities, namely, 40/80, 35/70, and 37/75; that all of such rugs were individually made by hand by various weavers in and around Kerman; that said rugs varied from each other in the closeness of the weave, the quality of the wool yarn, the colors used, and in the artistry of the design.

Mr. Sorooshian, in the aforesaid affidavit, further stated that the rugs in question were all personally purchased by him for and on behalf of Rustam K. Kermani Co., from the individual weavers or sellers as noted on the relevant invoices; that, in purchasing said rugs,

he acted as buying agent for the plaintiff herein on a commission basis, the amount of said commission being that as stated on the invoice in each instance; that, in addition to purchasing said rugs for and on behalf of the importer herein, he also inspected the rugs, attended to the proper packing for shipment, and arranged for their exportation and shipment from Iran to the United States; that the actual amounts expended for such services were as stated on the invoices. The affiant further stated that the prices paid by him to the (weavers and) sellers of the rugs, as buying agent for Kermani Co. were the prices at which said weavers and sellers offered such rugs to any and all purchasers in Kerman in the usual and regular course of trade, whether for home consumption in Kerman or for exportation to the United States, and that such prices were the prices prevailing on the date of exportation.

Mr. Sorooshian also stated that the rugs in question were purchased on a square-foot basis, the price being the same regardless of the quantity purchased; that the price per square foot varied according to the quality of the wool in each individual rug, its color, design, and workmanship; that, at the time of purchase, as well as at the time of exportation of the involved rugs, he knew that other Kerman rugs of similar 40/80, 35/70, and 37/75 quality and of like colors, designs, and workmanship were being offered for sale and sold in Kerman to all purchasers both for home consumption and for exportation to the United States at the prices listed on the invoices covering the shipments here in question.

George A. Tadross, an importer of Oriental rugs from Iran, testifying on behalf of the defendant, stated that he had purchased many rugs both on his own behalf and on a consignment basis (R. 126); that he had received some rugs on consignment from the plaintiff concern in 1953; that, in the case of some of the latter rugs, they were inferior to other rugs he had purchased, particularly that designs in the figures and colors in some cases were not as good as other merchandise he had purchased. The record discloses that all of the Kermani rugs were returned by Mr. Tadross without being sold (R. 133). On cross-examination, the witness testified that, to his knowledge, he had never seen any of the rugs covered by the appeals herein. Subsequently, it was agreed between counsel that the last nine rugs enumerated on plaintiff's exhibit C were rugs imported by the plaintiff herein which were later consigned to Tadross Brothers (R. 152–153.) He further stated that he had handled mostly the best qualities of Kerman rugs, including 40/80's and very few 35/70's, and that there were different unit prices for the 40/80 qualities he had purchased and that the same was true as regards the 35/70 qualities he had handled (R. 138).

The value found by the appraiser is presumed to be the value of the merchandise, and it was incumbent upon the plaintiff herein, the party challenging the correctness of such value, not only to prove that the action of the appraiser was erroneous but also to establish affirmatively that the different dutiable values relied upon by the plaintiff were the proper ones. *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kenneth Kittleson* v. *United States*, 40 C.C.P.A. (Customs) 85, C.A.D. 502. The statements contained in plaintiff's collective exhibit 1, the affidavit of Mr. Sorooshian, who, plaintiff alleges, acted as its buying agent in the purchase of the involved rugs, does not contain any evidentiary facts to support the values here claimed by the plaintiff for the imported rugs. Statements contained therein to the effect that the prices paid by him to the weavers and sellers of the rugs at bar were the prices at which the latter offered such rugs to any and all purchasers in Kerman in the ordinary course of trade and that such prices were the prices prevailing on the respective dates of exportation, are but mere conclusions of law on the part of the affiant and mere declarations of essential ultimate facts in issue. Accordingly, they have no probative value in establishing the correct values for the imported rugs. *Brooks Paper Company* case, *supra*. The same is true respecting the statements made by the affiant in plaintiff's collective exhibit 1 relative to his status as so-called buying agent for the importer, as well as conclusions contained therein with regard to claimed commissions paid to him for services rendered the plaintiff. Likewise, the testimony of the witness Kermani, respecting the statutory market value for the involved rugs, is defective in establishing the claimed values.

It appears from the record in this case that the exporter of the involved merchandise did not export rugs to anyone else in the United States other than the plaintiff herein (R. 58) and that, during the involved period, the plaintiff was the exclusive purchaser of rugs from the exporter (R. 67). It further appears from the testimony of the witness Kermani that the rugs ordered by the importer were made pursuant to his instructions and specifications (R. 73). In this connection, as heretofore observed, the Government Examiner Kahn testified that he determined that the merchandise involved in these cases and which he examined was specially manufactured for the importer herein and that, for that reason, he compared other merchandise from other importers of similar merchandise, and adopted their prices in appraising the imported rugs (R. 96). The importer, in the case at bar, maintains that the invoice prices represent the freely offered prices for such or similar merchandise on the various dates of exportation by the same or different exporters. However, plaintiff herein has failed to produce any invoices, statements, or contracts, or other evidence respecting transactions in Iran for export

of rugs to the United States probative of the values claimed by the plaintiff. The statute imposes upon the importer the burden of meeting every material issue involved in the case, and, if he fails to do so, the value fixed by the appraiser remains in full force in effect. *Brooks Paper Company* case, *supra*.

In the present record, competent evidence is lacking to establish, as is required under the statute, that the prices claimed by the plaintiff as the proper dutiable values are those at which the involved rugs were freely offered for sale or sold in Iran to all purchasers for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade. On the contrary, it appears from defendant's collective exhibit B, which details the manner in which business was conducted in Iran by Mr. Sorooshian on the importer's behalf, that the exporter of the goods in this case, because of lower costs in manufacture, was able to sell the involved rugs at a much lower price than that at which similar merchandise was sold by other manufacturers referred to in said collective exhibit B. Specifically, the exhibit indicates that one Mehdi Dilneghani, a manufacturer who sold rugs similar to those at bar, had a much larger cost in the production of his rugs, as appears in collective exhibit B, which would necessarily result in a greater selling price for his rugs. The record herein does not contain any evidence of sales, invoices, pricelists, or other evidence of the price or prices at which the said Mehdi Dilneghani or other manufacturers freely offered or sold their merchandise. The plaintiff's contention, therefore, that the cost or invoice value of the rugs here involved represents the statutory price at which similar merchandise was freely offered for sale or sold in Iran for exportation to the United States is without merit, in view of plaintiff's failure to establish by competent proof that the claimed values for the imported rugs represent the statutory values for similar goods in the country of exportation. Further, no evidence has been adduced on the part of the plaintiff tending to disturb the presumptively correct values for the involved rugs as found by the appraiser. Accordingly, the appraiser's finding of value in each case herein has not been overcome.

On the basis of the record before me, I find as facts:

(1) That the involved merchandise consists of so-called Kerman rugs, imported from Iran during the period from June 1951 to August 1957.

(2) That, on or about the dates of exportation, such or similar rugs were not freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade for home consumption in Iran.

(3) That, on or about the dates of exportation, such rugs were not freely offered for sale to all purchasers in the principal markets

in Iran in usual wholesale quantities and in the ordinary course of trade for export to the United States.

(4) That, on or about the dates of exportation, similar rugs were freely offered for sale to all purchasers in the principal markets in Iran in the usual wholesale quantities and in the ordinary course of trade, for export to the United States.

I conclude as matters of law:

(1) That there was no foreign value for such or similar merchandise.

(2) That there was no export value for such merchandise.

(3) That the proper dutiable value of the merchandise involved herein is the export value of similar merchandise, as that value is defined in section 402(d) of the Tariff Act of 1930.

(4) That the correct dutiable values of the rugs here involved are the appraised values in each case.

Judgment will be rendered accordingly.