(R.D. 11243)

MANNESMANN-MERR, INC. v. UNITED STATES

Entry Nos. 592; 821; 944; 1256.

(Decided November 30, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Richard J. Kaplan* and *Arthur H. Steinberg*, trial attorneys), for the defendant.

DONLON, Judge: Imported parts to be assembled, together with certain non-imported parts, for installation as an automatic extrusion press in the steel mill of Kilby Steel Co., at Anniston, Ala., were entered by plaintiff, in five lots, during the period between September 1958 and February 1959. Plaintiff, formerly known as Mannesmann-Meer Engineering and Construction Co., Inc., of Easton, Pa., at that time had removed its offices to Youngstown, Ohio, and changed its name to Mannesmann-Meer, Inc., the name in which this action is titled.

Sixty per cent of plaintiff's capital stock is owned by Mannesmann-Merr Aktiengesellschaft, of Monchengladbach, West Germany. For

convenience of reference and distinction, the German company will be called Meer A. G. and the American company Meer Engineering.

Meer A. G. is in the business of manufacturing parts for extrusion presses. Usually these are designed to the particular specifications of the buyer in whose factory the press is to be installed. Meer A. G. had an arrangement with its United States affiliate, Meer Engineering, under which the latter had the exclusive right to sell Meer A. G. machines, parts and equipment in the United States, Canada and Mexico.

Four appeals to reappraisement are here consolidated for purposes of trial. These appeals embrace the same valuation issue with respect to all five of the importations, by Meer Engineering, of parts and equipment for the Kilby extrusion press. The merchandise was appraised on the basis of constructed value. Plaintiff claims that there is an export value, and that the entered merchandise should be appraised on that basis. It is obvious that, if an export value is proved, appraisal on the basis of constructed value is improper.

The merchandise at bar was imported subsequent to February 27, 1958. It is conceded that the imported articles are not among those enumerated on the so-called Final List issued by the Secretary of the Treasury (T.D. 54521). Valuation, therefore, is governed by the provisions of the Customs Simplification Act of 1956 (T.D. 54165).

The relevant statutory provisions as to export value, including definitions, are as follows:

Section 402(b).  Export value.

For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f).  Definitions.

For the purposes of this section—

(1)  The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

    (A)  to all purchasers at wholesale, or
    (B)  in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or

(iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

Certain facts either are stipulated or conceded or have been sufficiently established by proofs, so as to require little discussion in this opinion. These facts may be briefly summarized.

The principal market was at the Meer A. G. plant. Sales of the merchandise at bar were in the usual wholesale quantity. Such merchandise was sold and offered for sale by Meer A. G. for export to the United States at the times of exportation of the merchandise at bar only to a selected customer, Meer Engineering. The aggregate price billed by Meer A. G. to Meer Engineering for the imported merchandise, including charges for certain non-imported parts and the German inland charges, was $793,091. The ordinary course of trade in sales by Meer A. G. for export to the United States consisted of sales, such as that at bar, to Meer Engineering.

Granted the foregoing as facts, there remains the issue under the statutory formula as to export value cited *supra*, whether or not the sale on which plaintiff relies, a sale made by Meer A. G. to its selected customer, Meer Engineering, was "at a price which fairly reflects the market value of the merchandise" and without restrictions as to disposition or use by Meer Engineering, other than such restrictions as were expressly permitted by Congress, as recited in section 402(f) (1).

As to restrictions on use or disposition by Meer Engineering, I find none that is prohibited by section 402(f) (1).

The litigated issue thus is narrowed down to the question whether plaintiff has shown, by its proofs, that the price which it, a selected customer, paid for the merchandise at bar, was a price "which fairly reflects the market value of the merchandise."

Plaintiff's brief is not helpful to the court in reaching the answer to *that* question. There are several cases in which the courts have discussed what proofs are required to show that price to a selected customer, under the Customs Simplification Act of 1956, fairly reflects market value. Plaintiff's brief does not discuss them. Indeed, with one exception they are not even mentioned. On the authority of a single case, plaintiff asserts that its claim at bar is "upheld right down the line." The case which plaintiff cites for that proposition is *Chr. Bjelland & Co., Inc.* v. *United States*, 52 CCPA 38, C.A.D. 855. Plaintiff's argument at bar, so its brief recites, is "to a large extent a quotation of most [*sic*] the questions of law decided by the court in that case on the interpretations to be given to the phrases 'selected

purchasers at wholesale' 'freely sold' 'do not substantially affect the value of the merchandise to usual purchasers at wholesale' 'restrictions' 'ordinary course of trade,' and 'normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.' "

It will be observed that plaintiff does not argue that *Bjelland* (or any other case, for that matter) supports the proposition that the proofs plaintiff has adduced here are sufficient to establish that the sales price which plaintiff claims as export value is a "price that fairly reflects the market value." No case is cited on *that* issue. However, as earlier noted, that is *the* principal issue here.

Let us consider *Bjelland*, since on it plaintiff rests its case. The issue there was whether appraisement should be on the value of such, or of similar, merchandise. That is not in issue here. As is too well known to require elucidation, a plaintiff who seeks, as *Bjelland* did, to use the value of *similar* merchandise for appraisement, must prove that there is no statutory export value for *such* merchandise.

In *Bjelland* the merchandise, bristling sardines in olive oil and kipper snacks, imported from Norway, was appraised at export value based on sales of *such* merchandise to two selected customers in the United States. One of these customers was a wholly owned subsidiary of the Norwegian seller. The other United States customer was not an affiliate. Sales to both, the affiliate and non-affiliate alike, were at the same prices and on the same terms, without any distinction as between the affiliated and the non-affiliated customers.

The appraiser valued the *Bjelland* merchandise, under the Customs Simplification Act of 1956, at the selling price of the merchandise to the exporter's two selected customers for export to the United States. Plaintiff's claim was that because of the exclusive relationship between the seller and the buyers, and also because of certain territorial restrictions as to their respective resale privileges, the merchandise was not freely sold in the ordinary course of trade at a price that fairly reflected the market value, so that sales of such or similar merchandise by others, as defined in section 402(f)(4)(B), were properly the measure of export value.

Construing the new definition of "freely sold" found in section 402(f), *supra*, the trial judge, the appellate division, and the court of appeals all found that the territorial restrictions on resale were within the express permission of the new statute, that the relationship of the parties (one being a non-affiliate) had not substantially affected the value at which the merchandise was sold to selected customers, and that, therefore, there was an export value for *such* merchandise, as the appraiser had found.

There was little discussion in *Bjelland*, and seemingly less controversy, as to whether the value found by the appraiser was based on a

price that fairly reflected market value, which is the issue here. Judge Wilson, sitting as trial judge, commented in his opinion that plaintiff's witnesses had testified that the prices paid for the merchandise at bar were higher than the prices paid for merchandise of a similar kind, for the reason that the merchandise at bar was an established brand which was well recognized in the United States. Judge Wilson found that the sales to exporter's selected customers in the United States were at prices which fairly reflected market value, *Chr. Bjelland & Co., Inc.* v. *United States*, 48 Cust. Ct. 593, Reap. Dec. 10213.

On the subject of market value, Judge Martin, writing for the unanimous appeals court, said:

* * * the market value is not merely the intrinsic value of the merchandise, but rather, is the price which a product is able to command in the market. The price may reflect the benefit to the purchaser of the goods that the goods are a well-recognized, established and advertised brand, without such benefit being an unfair indicia of market value. [*Chr. Bjelland & Co., Inc.* v. *United States*, 52 CCPA 38, C.A.D. 855, at p. 43.]

Not cited by plaintiff, but relevant to the issue of fair market value under the Customs Simplification Act of 1956, are other recent cases. One is *John V. Carr & Son, Inc.* v. *United States*, 48 Cust. Ct. 506, Reap. Dec. 10138.

There the issue was, as it is here, whether appraisement should be on the basis of export value, as plaintiff claimed, or on the basis of constructed value, as the appraiser found. (The secondary issue in *Carr*, as to the correct amount of the constructed value, is not pertinent here.)

As to whether prices on a sale to a selected customer *fairly* reflect market value, the crux of the dispute in *Carr* lay in the fact that certain of the Canadian manufacturer's fixed costs were not included in pricing the merchandise to its subsidiary corporation on sale for export to the United States. The trial judge found that the evidence showed that prices *ex* such costs were competitive with prices charged by American firms for the same merchandise, and hence were prices which fairly reflected market value.

The appellate division reversed, with one judge dissenting. *United States* v. *John V. Carr & Son, Inc.*, 52 Cust. Ct. 599, A.R.D. 165. The majority were of opinion that a price which does not embrace all elements entering into cost of production does not *per se* fairly reflect market value. The appeals court affirmed, with two judges dissenting. *John V. Carr & Son, Inc.* v. *United States*, 52 CCPA 62, C.A.D. 860. *Carr* was concerned, basically, with whether the market value, which price is fairly to reflect, is price in the domestic market in the United States or price in the domestic market in the country of production.

There is discussion in *Carr* of the earlier case of *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841. There, by unanimous decision, the court of appeals held that sales to a selected customer for export to the United States at prices which excluded selling expenses that were incurred in domestic sales in the foreign country, which expenses were included in prices of foreign domestic sales, were nevertheless export prices which fairly reflected market value since the domestic selling expenses were shown not to have been incurred in the export sales.

Recently, in *Union Carbide Corporation* v. *United States*, 55 Cust. Ct. 542, Reap. Dec. 11039 (review pending), the issue was, as here, between appraisement on the basis of constructed value and plaintiff's claimed basis of export value, sale for export from Canada to the United States having been made to a selected customer. Thus, the burden was on plaintiff to show, by sufficient proofs, existence of all elements of the claimed export value. The trial judge found that, even after excluding from home market price certain elements of cost that were peculiar to the Canadian market, evidence was lacking to show that the remainder was equal to, or fairly approximated, market value. Therefore, plaintiff failed to support its burden of proof.

To like effect, see *C.J. Tower & Sons of Buffalo, Inc.* v. *United States*, 55 Cust. Ct. 586, Reap. Dec. 11058 (review also pending).

The difficulties of proof inherent in the new statutory concept of price to a selected customer which fairly reflects market value are pointed up by these cases. That there must be some credible proof that price, on a sale to a selected customer, fairly reflects market value, when a plaintiff seeks to substitute export value for constructed value, goes without saying. Where certain costs are excluded from price, the burden is to prove that these costs were, in fact, not incurred in the export transaction.

The sole proof on the issue of market value in the case at bar appears in the affidavit of Mr. Paul Joeres, director of sales of Meer A. G. (exhibits 8, 9), as follows:

Said price of $793,091.00 is a normal price for this type of equipment, and includes our normal mark-up of 15% over total costs and expenses for the production thereof.

We are in the market to make this type of heavy equipment and to sell it throughout the world wherever there is a demand for it, and in competition with other manufacturers in Germany and in other countries. Our agents and resellers in Germany and in many other countries throughout the world receive the same price treatment (costs plus normal mark-up) whether or not related to us. The above shipment is more or less our standard equipment only modified to meet customer's requirements. None of our agents or resellers receives a better price than any other, and the price at which the above identified extrusion mill etc. was sold to Mannesmann-Meer Engineering & Construction

Co. Inc., was in the 1957–1959 period available to every reseller throughout the world.

Do these averments sufficiently prove that the price at which Meer A. G. sold to its selected customer, is a price that fairly reflected market value? I think not. These are conclusionary statements, rather than facts as to the costs that went into price.

Moreover, a "normal" price, whatever that may be, is not necessarily a price which fairly reflects market value. There is no evidence of transactions from which the court can find, for itself, what is normal, or even what affiant intended to infer by use of that word. To what extent did competitive conditions influence price? This merchandise "is more or less our [Meers A. G.] standard equipment only modified to meet customer's requirements." To what extent do such modifications affect price, especially if the modifications are "more" and not "less"? The court is not told. It is idle to speculate. Conclusionary assertions are not a substitute for facts.

The statement that the modified extrusion press which was sold to plaintiff was "available to every reseller throughout the world" at the same price, is likewise a conclusion. It is not proof that price fairly reflected market value *in the export market to the United States*. Moreover, it suffers from the fact that purchasers ordered merchandise to particular specifications, and hence the availability of this identical merchandise to others would not imply a market for *such* merchandise.

In *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 56 Cust. Ct. 653, Reap. Dec. 11152, where the evidence was factual and not, as here, conclusionary, the trial judge held that plaintiff had not sustained its claim to export value, since proofs were insufficient to show that the price on sale to a selected customer fairly reflected market value.

In seeking the advantage of a substantially relaxed basis of appraisement authorized by Congress in the Customs Simplification Act of 1956, a plaintiff is fairly required to prove entitlement to that advantage. Here the presumption is that the appraiser found that sales price to the exporter's selected customer did not fairly reflect market value. The higher constructed cost found by the appraiser, which plaintiff's proofs do not negate, lends factual support to that presumption.

Plaintiff has not overcome the presumption of correctness that attaches to the appraisement.

I find as facts:

1. That the merchandise of these appeals consists of imported parts and equipment, manufactured to buyer specifications by Mannesmann-Meer Aktiengesellschaft, to be assembled, together with certain non-imported parts, and installed as an automatic extrusion press in the steel mill of Kilby Steel Co., Anniston, Ala.

2. That the merchandise at bar was imported by Mannesmann-Meer, Inc., a firm in which the manufacturer owned 60 per cent of the capital stock.

3. That buyer had the exclusive right to sell manufacturer's machines, parts and equipment in the United States, Canada and Mexico.

4. That the aggregate price billed to plaintiff for the imported merchandise, including charges for certain non-imported parts and German inland charges, was $793,091.

5. That the merchandise at bar was imported subsequent to February 27, 1958, and is not among the articles enumerated on the Final List of the Secretary of the Treasury (T.D. 54521), issued pursuant to the Customs Simplification Act of 1956 (T.D. 54165).

6. That appraisement was made on the basis of constructed value under section 402(d), Tariff Act of 1930, as amended.

7. That plaintiff claims there is an export value.

I conclude, as matters of law:

1. That plaintiff's proofs fail to overcome the presumption that constructed value, as defined in section 402(d), Tariff Act of 1930, as amended, is the basis for valuation of the merchandise at bar.

2. That the record does not establish values for the merchandise at bar other than the values found by the appraiser.

3. That the constructed values are the respective appraised values. Judgment will be entered accordingly.