(R.D. 11645)

C. PAPPAS COMPANY, INC. *v*. UNITED STATES

(Decided March 25, 1969)

*Princi & Lecomte* (*Peter W. Princi* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Arthur E. Schwimmer* and *Thomas Fernandes,* trial attorneys), for the defendant.

RICHARDSON, Judge: The merchandise of these consolidated reappraisement appeals consists of canned tomatoes and tomato pastes packed in and exported from Italy at various times between 1963 and 1966, and entered at the port of Boston, Mass. The merchandise was appraised at certain unit values less 1 percent, packed, including the cost of American cartons, if any. Appraisement in all cases resulted in an advance in value; and the issue before the court is the proper dutiable export value, the parties having stipulated that export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis for determining the value of the involved merchandise.

The plaintiff-importer entered the merchandise at certain f.o.b. Naples, Italy, prices, less discounts, and has presented the instant cases on the theory that they involve only a dispute concerning the discounts. And to this end plaintiff adduced testimonial and documentary evidence with a view toward establishing that in the ordinary course of trade a discount, termed a trade discount or discount in lieu of commission and ranging in amount from 3 to 5 percent, together with a 1 percent discount for swell allowance or defective tins, was allowed by the exporters to all purchasers in wholesale quantities for exportation to the United States. No evidence was presented by the plaintiff or otherwise appears in the record concerning export prices *per se.* And the evidence, including the official papers, does not touch upon criteria utilized in the appraisements themselves.

The defendant opposes the narrow view of the issue tendered by plaintiff, and in addition, defendant adduced testimonial evidence with a view toward establishing that the claimed trade discount or discount in lieu of commission was not allowed in the ordinary course of trade— the bulk of the export transactions being handled by and through commission agents of the exporters, and also that export prices in the Italian canned tomato and tomato paste market were in a state of upward fluctuation during the periods here involved.

Examination of the appeals at bar discloses (1) that of the 75 appeals involved herein the appraiser accepted the entered unit values in only five appeals, namely, appeals R64/5573, R64/6549, R64/12099, R64/12100, and R65/15970; (2) that of the remaining 70 appeals the appraiser reduced the entered unit values in only six appeals, namely, appeals R64/13421, R64/19777, R65/3242, R65/3244, R65/10539, and R65/12980; and (3) that in the other 64 appeals the appraiser advanced the entered unit values. All of this is in addition to action taken by the appraiser with respect to the allowance of a 1 percent discount—a discount which might be said to represent an allowance for swells or defective tins, although there is no evidence which indicates the basis for the allowance.

On the state of the record herein the court is of the opinion that reappraisement of the merchandise at bar involves not only a question of discounts in 70 of the appeals herein, but also a question of basic export price in such cases as well, the appraisements therein not being "severable" in nature. Consequently, the party attacking the appraised value in these cases is not privileged to limit his attack to the single item which he chooses to challenge, but must offer proof which meets all the statutory requirements for ascertaining export value. *S. S. Kresge Co. et al.* v. *United States*, 45 Cust. Ct. 469, Reap. Dec. 9778; *Bruce Duncan Co., etc.* v. *United States*, 53 Cust. Ct. 438, Reap. Dec. 10832. Since plaintiff has not offered any evidence other than that which deals with discounts, the court agrees with the defendant, to the extent of all appeals herein except appeals R64/5573, R64/6549, R64/12099, R64/12100, and R65/15970, that plaintiff's evidence does not rebut the presumption of correctness attaching to the appraised values.

With respect to the aforesaid five appeals, the appraisements therein are "severable" in nature, and as such, it is proper for the court to consider the evidence as to such appeals solely on the question of discounts, with sales, as distinguished from offers to sell, being the primary criterion to be used for ascertaining export value under the new law formula in the light of such evidence. And on this phase of the case, John C. Pappas, chairman of the board, treasurer and general manager of the plaintiff corporation, testified that plaintiff received the *offerings* (pertaining to the merchandise at bar) from the packers at prices per case, less 3 to 5 percent discount, that in most cases it was 3 percent discount and 1 percent for swell allowance, that the practice was for the packers to make *offerings* direct to the importers and for importers to close their deal direct with the packers, and that some business, involving lesser importers and distributors and even retailers, was done through brokerage firms. According to the witness his knowledge of trade practices in Italy is based on firsthand observa-

tions he has made during many visits to Italy, as well as on the basis of conversations he has had over the years with people and competitors in the trade. (R. 25.)

Affidavits from suppliers of the imported merchandise were received in evidence. The affidavit of one such supplier, namely, Carlo Squeri, of S.C.A.C. di Squeri & Co., dated May 30, 1967, and received as plaintiff's exhibit 1, avers, among other things, that during the period between September and December 1963, the same prices and discounts given to the plaintiff were *offered* to all American importers and that this was normal practice. But in a prior affidavit dated October 26, 1964, and received as plaintiff's exhibit 4, this same Mr. Squeri avers that during the period August 15, 1963 to and including August 1, 1964, his company's total packing and sales of tomato products, both wholesale and for export, was 40,000 cases, of which the plaintiff bought 2,000 cases, and that 38,000 cases were sold to wholesalers *in Italy*. The periods of exportation covered in the five appeals under consideration are as follows:

| Appeal No. | Date of Exportation |
|---|---|
| R64/5573 | May 24, 1963 |
| R64/6549 | October 30, 1963 |
| R64/12099 | January 27, 1964 |
| R64/12100 | January 18, 1964 |
| R65/15970 | April 6, 1965 |

It will be noticed that the first and the last of the above enumerated appeals cover merchandise exported outside of the period covered in exhibits 1 and 4. And no additional data is supplied in the Squeri affidavits regarding *sales* for periods other than as indicated in exhibits 1 and 4.

In plaintiff's exhibits 2, 3, 5, and 6, consisting of affidavits of other Italian suppliers of tomato products to plaintiff, as well as in exhibit 4, the affiants aver that the discounts given to plaintiff represented a discount in lieu of a broker's commission and a swell allowance, which is common to the trade. In the affidavit received as exhibit 2, dated October 15, 1964, Giacomo Rinaldi, president of SAR Rinaldi, avers that during the period August 15, 1963 and August 1, 1964, Rinaldi's total packing and sales of tomato products, both wholesale and for export, amounted to 150,000 cases, of which plaintiff bought 40,000 cases. No mention is made as to how the remainder of the cases was disposed of.

In the affidavit received as exhibit 3, dated October 15, 1964, Biagio Salvati, president of Guiseppe Salvati & Figli, avers that during the period between August 15, 1963 and August 1, 1964, Salvati's total packing and sales of tomato products, both wholesale and for export, was 130,000 cases, of which plaintiff bought 61,300 cases, and that the rest, namely, 68,700 cases, were sold to wholesalers in Italy.

In the affidavit received as exhibit 5, dated October 15, 1964, Mario D'Alessio of La Conserviera Meridionale, S.p.A., avers that during the period between August 15, 1963 and August 1, 1964, his company's total packing and sales of tomato products, both wholesale and for export, was 50,000 cases, of which plaintiff bought 7,500 cases, that 7,500 cases were sold to wholesalers in Italy, and that 35,000 cases were exported to others and that during said period his company shipped to other importers in the United States such as Uddo & Taormina of New York at prices *approximately* the same as sold to plaintiff.

In the affidavit received as exhibit 6, dated October 15, 1964, Saverio Galano, chief of the firm of Antonio Galano, avers that during the period between August 15, 1963 and August 1, 1964, his company's total packing and sales of tomato products, both wholesale and for export, was 60,000 cases, of which plaintiff bought 19,000 and the rest, namely, 41,000 cases, were exported to other importers in the United States such as Uddo & Taormina and F.LLi de Rosa of New York at prices *approximately* the same as sold to plaintiff.

Two of the aforementioned affiants, namely, Messrs. Salvati and Galano, executed supplemental affidavits, dated June 14, 1967, and received in evidence as plaintiff's exhibits 13 and 12, respectively, in which they aver that their respective companies have been in the business of canning tomatoes for the past 50 years, have sold tomatoes to plaintiff and other importers from the United States for 42 years, have *offered* these tomatoes for sale to plaintiff at the same prices as such tomatoes were *freely offered* for sale to all purchasers from the United States, and that neither plaintiff nor any of the other American importers were in any way related to, connected with or possessed any interest in said companies.

Other documentary evidence adduced by plaintiff consists of letters from some of plaintiff's suppliers (plaintiff's exhibits 7, 9, and 10) addressed either to plaintiff or to its representative, and a cable from one of the suppliers (plaintiff's exhibit 8) addressed to a third person, all relating to particular transactions and indicating in some, though not in all of such documents, the existence of discount arrangements in connection with the sale of tomatoes. In fact, the price quotation given in the cable makes no mention whatever of the discount. And additional testimonial evidence relative to the trade discount was also adduced by plaintiff, but such additional testimony covered a period which terminated 10 or more years prior to the time of the involved exportations.

The foregoing comprises the substance of plaintiff's evidence bearing on the matter of discounts. It is clear from this evidence that plaintiff relies exclusively upon the practices of suppliers of the imported merchandise in the matter of discounts allegedly given by the

Italian exporters. It appears, however, that some confusion exists on the part of plaintiff with respect to the application here of the new law formula for ascertaining export value. Plaintiff gratuitously undertakes to furnish details of practices appropriate to the ascertainment of export value under the old law, at the expense, as the record shows, of requisite data called for pursuant to the new law formula.

The discount in question is said to be one given in lieu of a broker's commission. This in its very nature implies that the commission broker (seller's) played some role in the Italian tomato and tomato paste market and its export price structure. In this connection plaintiff's counsel, in explaining plaintiff's relationship with its exporter-suppliers, states (plaintiff's brief, pages 9 and 10) :

> . . . Due to the direct nature in which the purchases were made, packers allowed Pappas a discount, inasmuch as the expense of a broker's commission had been eliminated. . . .

And, having said that, plaintiff's counsel went on to argue (plaintiff's brief, page 11) :

> . . . *All importers* who purchased tomatoes and tomato paste from these suppliers did not receive a discount. The beneficiaries of this discount were those who purchased on a *direct basis*. . . .

Were the export sales arranged by plaintiff's suppliers with persons or firms other than the plaintiff as reflected in exhibits 5 and 6 consummated through a broker? And with respect to exhibit 2, were any of the sales other than the enumerated sales to plaintiff export sales involving the use of a broker? The instant record does not undertake to furnish the court with answers to these questions.

It is to be noted that none of plaintiff's suppliers eliminated in their affidavits the consummation of export sales through brokers, or the broker as a functionary in the Italian tomato and tomato paste market. No doubt plaintiff's counsel was mindful of this fact in making the aforesaid statement, as well as of the fact, hereinbefore noted in connection with said affidavits, that these suppliers did not pursue a course of selective export trading with American importers. Consequently, with the making of said statement by counsel, inescapable under the evidence at bar, plaintiff seems to have effectively removed itself from any possibility of establishing the essential fact that the trade discount in question was given to all purchasers at wholesale—the only course open to plaintiff under the new law formula at this point. See 19 U.S.C.A., section 1401a(f)(1).

Furthermore, it may well be, for all that the record shows, that export sales consummated through brokers at prices which included their commissions predominated over direct sales at prices which excluded the broker's commission. Certainly, by reason of the nature of the appraisements in the five cases under consideration here on the

issue of discounts the court is required to presume that such was the case until the contrary has been shown. The only evidence which plaintiff has offered on this subject is the statement of plaintiff's board chairman that some business was done through brokers involving lesser importers, distributors and retailers. The court regards this statement, standing by itself, as being insubstantial, if indeed it is, evidence of the nature of the market in question. Bearing in mind the fact that courts in reappraisement proceedings are concerned with the manner in which purchases are made and not with the character of the purchasers, it is entirely possible that the volume of export sales consummated between Italian exporters and so-called "lesser importers and distributors" and retailers could exceed, in the aggregate, at any given time the volume of export sales consummated between such exporters and large importers. And Mr. Pappas' statement does not purport to eliminate such possibility, and is, at best, inconclusive on the matter.

Also, another factor to be considered insofar as the trade discount is concerned is the matter of the extent of the Italian wholesale market allowing such a discount. The court is entitled to be able to find from evidence of an alleged trade discount that such discount is the practice in a substantial portion of, if not the entire foreign export market under consideration. *United States* v. *W. H. S. Lloyd & Co., Inc.*, 24 CCPA 390, 396–397, T.D. 48832. See also, *Lovell Dressel Co., Inc.* v. *United States*, 25 CCPA 64, 68, T.D. 49064. No showing has been made in the presentation of plaintiff's case, or otherwise appears in the record before the court, as to what portion of the Italian tomato and tomato paste market is represented by the exporters with whom plaintiff did business in connection with the imported merchandise.

For the foregoing reasons the court concludes that plaintiff has failed to make out a *prima facie* case supporting an export value different from that returned in the appraisements at bar. It is, therefore, unnecessary for the court to discuss the evidence proffered by the defendant in support of the appraisements herein.

Therefore, the court finds as facts:

1. That the merchandise herein consists of tomatoes and tomato pastes exported from Italy at various times between 1963 and 1966, and entered at the port of Boston, Mass.

2. That said merchandise was appraised on the basis of export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at certain unit values shown in red less 1 percent, packed, inclusive of the cost of American cartons, if any, resulting in an advance in value over the entered values, and the parties agree that export value as so defined is the proper basis for determination of the value of said merchandise.

3. That there is no evidence of the existence of export values for said merchandise different from or other than those returned by the appraiser, and no substantial evidence, if there be any such evidence, that a discount in lieu of a commission was given to all purchasers of said merchandise at wholesale for exportation to the United States by the Italian exporters.

And the court concludes as matters of law:

1. That the presumption of correctness attaching to the appraisement of the merchandise herein has not been rebutted.

2. That export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis for determination of the value of said merchandise.

3. That such export value is represented herein by the appraised values.

Judgment will be entered herein accordingly.