(A.R.D. 253)

MANNESMANN-MEER, INC. v. UNITED STATES

Entry Nos. 592; 821; 944; 1256.

First Division, Appellate Term

(Decided April 9, 1969)

*Allerton deC. Tompkins* for the appellant.

*William D. Ruckelshaus*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the appellee.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: In this application for review, appellant (plaintiff) challenges a reapraisement decision of the trial judge (Judge Donlon) sustaining the government's appraised values in four cases that were consolidated for trial. *Mannesmann-Meer, Inc.* v. *United States*, 57 Cust. Ct. 697, R.D. 11243 (1966). The merchandise, which was imported from West Germany, was appraised by the government on the basis of constructed value—as set forth in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. (1964 ed.) § 1401a(d)). Appellant claims that the proper basis of appraisement is export value as defined in section 402(b) of the Tariff Act of 1930, as amended (19 U.S.C. (1964 ed.) § 1401a(b)), and that the trial judge erred in not so finding. We affirm the decision of the trial court.

The applicable provisions of section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, read as follows:

SEC. 402.—VALUE.

\* \* \* \* \* \* \*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undegoing appraisement.

\* \* \* \* \* \* \*

The importations in issue consisted of five shipments of component parts which, together with certain non-imported parts, were to be assembled into a mechanical extrusion press plant and installed at the Kilby Steel Co. mill, Anniston, Alabama, where it was to be used for the production of low-carbon steel pipe. The manufacturer of the im-

ported component parts was Mannesmann-Meer Aktiengesellschaft of Monchengladbach, West Germany (hereafter referred to as "Meer A.G."), which is in the business of manufacturing component parts for extrusion press plants according to the specifications of the buyers in whose factories such plants are to be installed. The importer of the component parts was appellant Mannesmann-Meer, Inc. (hereafter referred to as "Meer, Inc."), a domestic corporation which has its principal offices in Youngstown, Ohio. Sixty percent of the capital stock of Meer, Inc. was owned by Meer A.G. In addition, Meer, Inc. had the exclusive right to sell the products of Meer A.G. in the United States, Canada and Mexico.

The trial judge found—without challenge here—that the principal market for component parts such as those involved was at the Meer A.G. plant in West Germany; that these component parts were sold and offered for sale by Meer A.G. to Meer, Inc. as a selected purchaser, in the usual wholesale quantity, in the ordinary course of trade, and without any restriction as to disposition or use; and that the aggregate price billed by Meer A.G. to Meer, Inc. for the five shipments of imported merchandise, including charges for certain non-imported parts and German inland charges, was $793,091.

In this setting, plaintiff (appellant here) argued before the trial court (i) that the government's use of constructed value as the basis of appraisement for each of the five shipments was improper; (ii) that export value was the proper basis of appraisement; and (iii) that such export value was represented by the aggregate price it (plaintiff, Meer, Inc.) paid to Meer A.G. for the imported parts—which price, it stated, was the total aggregate purchase price of $793,091 paid to Meer A.G. less German inland charges of $5,713.20 and less $106,159.66 for non-imported parts that were also covered by the contract between Meer, Inc. and Meer A.G., resulting in a claimed dutiable value of $681,218.14. In this connection, plaintiff contended—and the trial judge found—that the record demonstrated (as set out above) that the importations were sold in the usual wholesale quantity, in the ordinary course of trade, to a selected purchaser without restriction as to disposition or use, and hence met in these respects the requirements for export value under sections 402 (b) and (f). Plaintiff further insisted that the evidence also showed that the aggregate price which it paid to Meer, Inc. fairly reflected the market value of the merchandise, and thus satisfied the remaining requirement for appraisement at export value. But on this last aspect, the trial court did not agree. It pointed out that the sole proof presented by plaintiff on the issue of fair market value was contained in an affidavit of the director of sales of Meer A.G.,[1] and found that the relevant portions thereof consisted

---

[1] 28 U.S.C. § 2633 provides that in reappraisement proceedings before a single judge of this court "affidavits * * * of persons whose attendance cannot reasonably be had * * * may be admitted in evidence."

of conclusory statements which were not competent to overcome the presumption of correctness attached to the appraisement based on constructed value.

Against this background, the single issue on this application for review is whether the trial court erred in finding that the appellant had failed to sustain its burden of showing that the aggregate price paid by it, Meer, Inc., to Meer A.G. for the importations fairly reflected market value. We conclude that this finding is not in error.

As noted by the trial judge, the only proof on the issue of fair market value consisted of the following statement contained in an affidavit of Meer A.G.'s director of sales:

> The extrusion mill, etc. was sold at a total ex-factory price to Mannesmann-Meer Engineering & Construction Co. Inc. for $793,091.00.
>
> Said price of $793,091.00 is a normal price for this type of equipment, and includes our normal mark-up of 15% over total costs and expenses for the production thereof.
>
> We are in the market to make this type of heavy equipment and to sell it throughout the world wherever there is a demand for it, and in competition with other manufacturers in Germany and in other countries. Our agents and resellers in Germany and in many other countries throughout the world receive the same price treatment (costs plus normal mark-up) whether or not related to us. The above shipment is our standard equipment only modified to meet customer's requirements. None of our agents or resellers receives a better price than any other, and the price at which the above identified extrusion mill etc. was sold to Mannesmann-Meer Engineering & Construction Co. Inc., was in the 1957–1959 period available to every reseller throughout the world.

The thrust of this statement, in particular, is that Meer A.G. sells uniformly throughout the world at a price representing its total costs plus a mark-up of 15 percent; that the aggregate price of $793,091 it charged Meer, Inc. reflected this practice; and that during the period relevant here, such price was available to every reseller throughout the world, whether or not related to Meer A. G. But we do not think that such a statement constitutes adequate proof that the aggregate price of $793,091 fairly reflected market value. For, in essence, it consists of mere declarations of essential ultimate facts in issue which hardly can be considered substantial evidence. The leading case on this point is *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952), where an appellant-importer—claiming that foreign or export value was the proper basis of appraisement for certain matrix board—sought to establish the usual wholesale quantities at which that product was freely offered for sale. The sole evidence as to this was a statement in an affidavit introduced by the appellant that "the great majority of sales * * * were in quantities of 15,000

square meters or more." The court held that this statement was nothing more than the affiant's own conclusion of an ultimate, issuable fact, namely the usual wholesale quantities, unsupported by evidentiary facts. As stated by the court: "[A] mere declaration of an essential ultimate fact in issue is not substantial evidence. * * * [U]ltimate facts are to be deduced from evidentiary facts by inference * * * and are the issuable facts which a complainant must prove to prevail * * *. This being the case, it seems clear that ultimate facts cannot at the same time also be the facts which afford a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* at 45. The court further observed (1) that in the absence of evidentiary facts, it was in no position to decide whether the witness considered all the factors which entered into a proper determination of the issue; (2) that to decide cases on evidence based solely on ultimate facts would, in effect, allow the parties to decide questions of law; and (3) that to consider a statement of ultimate facts as sufficient to overcome the statutory presumption of correctness of the appraiser would in practice permit the party challenging the appraised value to nullify at his will this express statutory mandate.

The considerations thus set out are equally applicable here where the affiant's statement represents merely his own conclusions. Such conclusions, unsupported by any records or by any sales or offers to sell apart from the one involved here, do not constitute substantial evidence of fair market value sufficient to overcome the presumption of correctness attendant upon the government appraisement. See e.g., *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705 (1959) ; *Rustam K. Kermani Co.* v. *United States*, 45 Cust. Ct. 511, 516, R.D. 9812 (1960), *aff'd* 47 Cust. Ct. 596, A.R.D. 138 (1961) ; *Morris Friedman* v. *United States*, 52 Cust. Ct. 660, 663–64, A.R.D. 178 (1964) ; *United States* v. *Global Imports, Inc.*, 47 Cust. Ct. 458, 461–62, R.D. 10078 (1961) ; *Leyden Custom Expediters, Inc.* v. *United States*, 54 Cust. Ct. 548, 552, R.D. 10911 (1965) ; *Reliance International Mfg., Ltd.* v. *United States*, 62 Cust. Ct. 876, R.D. 11629 (1969).

We also subscribe to the following comments of the trial court here concerning the affiant's statement (57 Cust. Ct. at 703) :

> Moreover, a "normal" price, whatever that may be, is not necessarily a price which fairly reflects market value. There is no evidence of transactions from which the court can find, for itself, what is normal, or even what affiant intended to infer by use of that word. To what extent did competitive conditions influence price ? This merchandise "is more or less our [Meers A.G.] standard equipment only modified to meet customer's requirements." To what extent do such modifications affect price, especially if the modifications are "more" and not "less" ? The court is not told. It is idle to speculate. Conclusionary assertions are not a substitute for facts.

The statement that the modified extrusion press which was sold to plaintiff was "available to every reseller throughout the world" at the same price, is likewise a conclusion. It is not proof that price fairly reflected market value *in the export market to the United States*. Moreover, it suffers from the fact that purchasers ordered merchandise to particular specifications, and hence the availability of this identical merchandise to others would not imply a market for *such* merchandise. [Emphasis in original.]

Even aside from these considerations, there is a further difficulty with appellant's case. The difficulty is that appellant's proof was directed to the dutiable value of a complete extrusion press rather than to the value of the merchandise in *each* of the five shipments covered by the appeals for reappraisement. It is a basic principle that "each invoice and entry constitutes a separate importation and must be appraised and classified without reference to any other invoice or entry * * *." *Omega Import Co.* v. *United States*, 52 Cust. Ct. 425, 428, R.D. 10671 (1964). See also *Border Brokerage Company* v. *United States*, 55 Cust. Ct. 748, 751, A.R.D. 194 (1965). In accordance with this principle, the five shipments were appraised separately by the government at individual values—not at a total combined value. In these circumstances, appellant had the burden of showing a separate export value for the merchandise involved in each of the five shipments—which burden was not obviated by consolidation of the cases for trial. Appellant made no effort to meet this burden and thus, there is nothing contained in the record which establishes that the values claimed by appellant in each of the entries fairly reflected the market value of the merchandise. Indeed, the affidavit of Meer A.G.'s director of sales—which has been previously quoted—refers only to the aggregate ex-factory price of an *extrusion mill*, i.e., $793,091, and not to the prices of the individual shipments. But the evidence thus adduced is entirely immaterial. For no such machine was invoiced in any of the entries, or was the subject of appraisement, or is involved in any of the appeals.

We affirm the findings of fact and conclusions of law of the trial judge, which we incorporate by reference. Judgment will be entered accordingly.