(Reap. Dec. 10759)

BORDER BROKERAGE COMPANY *v.* UNITED STATES

Entry No. 05–1716.

(Decided May 25, 1964)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*James F. O'Hara* and *Samuel D. Spector,* trial attorneys), for the defendant.

WILSON, Judge: This is an appeal for reappraisement of the value of certain metal machine parts, exported from Canada on or about September 20, 1961.

The merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, at a total value of $756. The importer claims the correct export value of the involved merchandise to be the sum of $756, less 10 percent discount.

Specifically, the plaintiff, customs broker for the importer, contends that the seller herein offers a 10 percent discount from unit prices to all "industrial users" or "contractors" and to those who resell "other than at retail"; that such purchasers are embraced within the definition of the term "purchasers at wholesale" (section 402(f)(3) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956); and that, accordingly, the prices to such purchasers represent the proper export values for the merchandise.

The provisions of the statute pertinent to the issues herein are as follows:

Section 402 (b) and (f) of the Customs Simplification Act of 1956:

SEC. 402. VALUE.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

    (A) to all purchasers at wholesale, or

\*    \*    \*    \*    \*    \*    \*

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\*    \*    \*    \*    \*    \*    \*

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

\*    \*    \*    \*    \*    \*    \*

(5) The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

The record consists of certain exhibits and the testimony of one witness called by the plaintiff. Plaintiff's collective exhibit 1 is a list of unidentified sales made by the exporter to "contractors," "resellers," and "end users" in the United States for the period 1960–1962. Plaintiff's exhibit 2 is a summary of sales given in monetary value and in the percentage of total sales of each class of purchaser from the manufacturer. Defendant's exhibit "A," hereinafter referred to, is a letter signed by plaintiff's witness setting forth the sales policy of the seller of the merchandise.

Mr. Daniel R. Montgomery, sales manager of the exporting firm, testified that his company sells its merchandise to three different classes of buyers, namely, (1) drilling contractors who do not resell but use the equipment for contracting purposes, (2) wholesalers who resell at retail prices, and (3) the so-called end users or consumers who use the equipment in their own mines to do their own drilling. The witness stated that, as far as drilling machines are concerned, one would be a unit of sale, whereas parts "could be variable" (R. 5). He further testified that the mines or "end users" receive no discount, but that on sales for export to contractors and to wholesalers who sell at retail, his firm offers a 10 percent discount on all nondiamond products and 5 percent discount on diamond products. The wholesalers

who sell at retail sell at the list price without discount, plus the cost of importation (R. 6). The record discloses that, on sales made to a certain "wholesaler," Joy Manufacturing Co., Michigan City, Ind., the 10 percent discount was not granted, plaintiff's witness giving as explanation the fact that the latter company was a competitor which gave no discount to the seller herein upon purchases made by the seller from the aforesaid company (R. 9).

On cross-examination, Mr. Montgomery could not state definitely whether, during the period 1960–1962, his company sold to certain named purchasers with a 10 percent discount but stated "it is our policy to do so" (R. 10–13). Counsel for the plaintiff agreed that another purchaser from the exporter, the Gateway Screw & Rivet, Inc., Chicago, Ill., designated as an "end user" on a purchase of certain articles on March 16, 1962, did not receive the 10 percent discount (R. 12).

Plaintiff, in its brief, refers to plaintiff's collective exhibit 1, together with plaintiff's exhibit 2, as comprising "the complete list of sales" to the United States made by Boyles Bros. Drilling Co., Ltd., for the years 1960, 1961, and 1962. However, plaintiff's collective exhibit 1 is a list of unidentified sales by Boyles Bros. Drilling Co., Ltd., to contractors, resellers, and end users in the United States for the indicated periods. The exhibit gives a list of names as customers and does not identify the individual articles in each transaction but merely gives totals in money value, setting forth the discounts alleged to be given to each class of purchaser. Such summary, in my opinion, is insufficient to establish certain essential requirements in the ascertainment of the dutiable value of the involved merchandise, such as the usual wholesale quantity for each article sold and whether the sales were made in the ordinary course of business.

The usual wholesale quantities are those quantities sold at a price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity. (Section 402(f)(5) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.) The usual wholesale quantity cannot be established by unidentified summaries of sales but must be established by competent proof. *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T.D. 43237. While plaintiff's witness, Montgomery, testified that one machine was the usual wholesale quantity, it appears there are no machines as such involved herein. The invoices, covering the merchandise in the case at bar, show that the merchandise consists of a number of articles, such as "4H–67F chuck flange," "3H–67K chuck key," "HH–69 drive sleeve key," and other individually identified items which have a separate identity for re-

appraisement purposes. Each of these items, as indicated on the summary of examination and appraisement sheet, was appraised at its invoice unit value. In customs adjudication, it is conclusively settled that the "appraised value" of merchandise is the unit value and not the total value of the importation. *Igstaedter & Co.* v. *United States*, 11 Ct. Cust. Appls. 477, T.D. 39570, and cases cited therein. Further, as held by our appellate court, discounts, trade or otherwise, are to be considered in determining the proper dutiable value of merchandise only when such discounts are made applicable to merchandise when sold in usual wholesale quantities and not otherwise. No competent evidence has been offered to prove the appraised values of the items noted above to be erroneous, nor has any other correct dutiable value been established for any of the items in question, a statutory burden imposed upon a plaintiff in reappraisement proceedings. Mere statements of a witness, as to what constitutes the usual wholesale quantity in the sale of merchandise, do not constitute probative evidence in establishing this element of valuation or the usual discounts allowed to purchasers and are mere conclusions unworthy of consideration in the ascertainment of dutiable value. *Jenkins Brothers* v. *United States*, 25 CCPA 90, T.D. 49093.

Plaintiff's exhibit 2, *supra*, offered by the plaintiff in support of its contention that the proper export values for the involved merchandise are the unit prices, less 10 percent discount, lists sales by the shipper to various United States customers in terms of monetary value, together with the percentage of total sales of each class of purchaser, with the discount allegedly given to each type of customer, such as "contractors," "purchasers for resale," and "end users." While this list indicates that, for the period 1960–1962, the greatest percentage of total sales was made to contractors who also were represented by the greatest percentage receiving a 10 percent discount, there is, however, no evidence of the volume sold for any of the involved merchandise. In my opinion, the information contained in plaintiff's exhibit 2, in the absence of evidence of sales or offers for sale, is of no evidentiary value and merits little, if any, consideration in the ascertainment of the dutiable value of the involved merchandise, specifically with respect to the claimed trade discounts allowed by the shipper to its purchasers. The burden of proof in establishing the claimed discounts rests upon the plaintiff, and such proof must be set forth by competent evidence. *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 CCPA 19, C.A.D. 118.

Defendant's exhibit A consists of a letter, dated October 9, 1959,

signed by plaintiff's witness and addressed to the plaintiff herein (customs broker), which recites in part as follows:

We are unable to set a uniform discount from list price policy to cover all sales into the United States. This is due to fluctuations in the U.S./Canadian dollar exchange rate and also to variations in our markup over cost to arrive at list prices. We do allow a constant discount to customers such as Boyles Bros. Drilling Company, Salt Lake City, Utah, or Selby Drilling Corp., Boise, Idaho, who, theoretically at least, purchase in sufficient volume and variety to offset the aforementioned fluctuations in exchange and variations in markup over cost.

There is no proof in this record, other than the aforesaid testimony of plaintiff's witness, that the policy of the exporter had "changed" with respect to the giving of trade discounts since the date of the information contained in defendant's exhibit A, which would establish, on or about the date of exportation of the involved merchandise, uniform trade discounts to its purchasers. As a matter of fact, plaintiff's witness could not state whether certain purchasers named by counsel for the defendant received a discount (R. 10–12). The whole record in this case, in my opinion, is devoid of any substantial evidence which might overcome the presumption of correctness attaching to the appraiser's finding of value.

On the basis of the record presented in this case, I find as facts:

1. That the merchandise under consideration consists of metal-machine parts, exported from Canada on or about September 20, 1961.

2. That said merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, at a total value of $756.

3. That such or similar merchandise to that involved herein was freely sold in the principal markets of the country of exportation at the time of the exportation of the merchandise undergoing appraisement to the United States, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

4. That the evidence in this case is insufficient to warrant a finding that the presumption of correctness attending the value found by the appraiser has been overcome or that the value claimed by the plaintiff has been established.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis for the determination of the value of the merchandise here involved, and

2. That such value for the merchandise in question is the value returned by the appraiser.

Judgment will issue accordingly.