(A.R.D. 194)

BORDER BROKERAGE COMPANY *v.* UNITED STATES

Entry No. 05–1716.

Second Division, Appellate Term

(Decided July 28, 1965)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the appellant.
*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellee.

Before RAO and FORD, Judges

FORD, Judge: This is an application for review of the decision and judgment of a single judge sitting in reappraisement and holding that the appraised value is the proper dutiable value of certain involved merchandise. From the judgment, entered May 25, 1964, reported in 52 Cust. Ct. 567, Reap. Dec. 10759, the importer appeals.

The merchandise herein consisted of various machine parts, exported from Canada to the United States on or about September 20, 1961, and was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at a total value of $756, representing unit prices at list. Counsel for both parties agreed at the opening of trial that export value under section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, was the proper basis of appraisement. Government claims the correct export value is the value at list prices, as appraised, without discount. The importer claims the correct export value to be $756 list, less a 10 percent discount.

The appellant herein, customs broker for the importer, contends that the seller of the merchandise offers a 10 percent discount from the unit prices to all "industrial users" or "contractors" and to those who resell "other than at retail"; that such purchasers are embraced within the definition of "purchasers at wholesale" (section 402(f)(3)) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, and that prices to such purchasers represent the proper export value of the merchandise.

The pertinent portions of section 402 (b) and (f) of the Customs Simplification Act of 1956 are:

**SEC. 402.  VALUE.**

\*       \*       \*       \*       \*       \*       \*

(b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*       \*       \*       \*       \*       \*       \*

(f)  Definitions.—For the purposes of this section—

\*       \*       \*       \*       \*       \*       \*

(1)  The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A)  to all purchasers at wholesale, or

\*       \*       \*       \*       \*       \*       \*

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\*       \*       \*       \*       \*       \*       \*

(3)  The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

\*       \*       \*       \*       \*       \*       \*

(5)  The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

The record consists of the testimony of one witness called by the plaintiff (the appellant herein), and three exhibits.  Plaintiff's collective exhibit 1 is a list of unidentified sales made by the exporter to "contractors," "resellers," and "end users" in the United States for the period 1960–1962.  Plaintiff's exhibit 2 is a summary of sales given in monetary value and in the percentage of total sales of each class of purchaser from the manufacturer.  The third exhibit is defendant's exhibit A, a letter signed by the plaintiff's witness, dated October 9, 1959, setting forth the sales policy of the manufacturer.

The record establishes that the exporter sold its merchandise to three different classes of buyers, namely, (1) drilling contractors who did not resell, but used the equipment for contracting purposes; (2) wholesalers who resold at retail prices; and (3) so-called end users, or consumers, who chiefly mined and used the equipment in their own mines to do their own drilling.

Concerning drilling machines, the witness stated that one (1) was the usual wholesale quantity, but that the unit or units of quantity of the parts therefor "could be variable."

The first two categories of purchasers received a 10 percent discount on all nondiamond products and 5 percent discount on diamond (*drilling*) products. The third category of purchaser, the "end user," received no discount, but paid the full unit prices at list. The wholesalers resold at retail at list price, without discount, plus cost of importation, the witness stated.

On sales to Joy Manufacturing Co., a (substantial) wholesaler and competitor, the 10 percent discount was not granted, because no reciprocal discount was awarded by Joy Manufacturing Co.

On cross-examination, the witness could not state definitely whether, in the period 1960–1962, his company sold to certain named purchasers at the 10 percent discount, although he said "it is our policy to do so."

On cross-examination, the witness testified that he could not state with certainty whether certain purchasers named by counsel for the defendant always received a discount. Plaintiff's counsel agreed that another purchaser, the Gateway Screw & Rivet, Inc., Chicago, Ill., designated as an "end user," did not receive the 10 percent discount on certain articles purchased on March 16, 1962.

The appellant herein, the plaintiff below, assigns as error the trial court's finding and holding that the export value of the involved merchandise, as such value is defined in section 402(b) of the Tariff Act of 1930, as amended, was the unit price of each article at list, as invoiced and appraised, without the 10 percent discount. The assignment of error has no foundation in law or in fact as is evidenced by the trial record.

It is elementary that, in an appeal for reappraisement, the appellant who challenges an appraisement has the burden of proving every statutory requirement of his case. It is incumbent upon him to show not only that the appraisement was incorrect but he must establish by evidentiary facts the correct unit values claimed. See *Kobe Import Co.* v. *United States*, 43 CCPA 136, C.A.D. 620. This is a dual requirement. Failure to prove both of the above elements must result in affirmance of the appraised values. See *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705; *United States* v. *Fisher Scien-*

*tific Co.*, 44 CCPA 122, C.A.D. 648; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593. He must establish, *inter alia*, the usual wholesale quantities in which such or similar merchandise was freely sold or offered for sale to all purchasers in the principal markets of the country from which exported. If he fails to establish the usual wholesale quantities, he has failed to meet his statutory burden of proof, and the valuation by the appraiser must stand. See *Brooks Paper Co.* v. *United States*, 40 CCPA 38, C.A.D. 495; *United States* v. *T. D. Downing Co.*, 20 CCPA 251, T.D. 46057.

In arriving at his decision in the lower court, the trial judge noted that plaintiff's collective exhibit 1, together with plaintiff's exhibit 2, comprised "the complete list of sales" to the United States made by Boyles Bros. Drilling Co., Ltd., for the years 1960, 1961, and 1962. Collective exhibit 1 was a list of unidentified sales to contractors, resellers, and end users in the United States. It gives a list of names as customers, but does not identify the individual articles in each transaction, and merely gives totals in money value, setting forth the discounts for each class of purchaser. The trial judge noted properly that this was insufficient to establish certain essential requirements of proof of dutiable value, such as usual wholesale quantity for each article sold, and whether the sales were made in the ordinary course of business. There is no competent evidence in the record of usual wholesale quantity of the merchandise imported in the case at bar. The witness testified that one machine was the usual wholesale quantity. Counsel for plaintiff also refers in its brief to one machine as being the usual wholesale quantity. No such merchandise is involved in the importation herein. No such machine was invoiced or appraised or is in issue in the case at bar. It is a mere idle fact unrelated to the issue and, therefore, warranted no consideration by the lower court. The merchandise that was actually imported herein was invoiced, itemized, and appraised as "4H–67F chuck flange, 3H–67K chuck key, HH–69 drive sleeve key," along with other items, for a total of $756.23, showing the 10 percent discount at $75.62, net $680.61. These were individual unit list prices, at which they were appraised. The trial judge correctly held that the aforesaid articles as itemized on the summary of examination and appraisement sheet were properly appraised at their invoice unit values. In customs adjudication, it is conclusively settled that the appraised value of merchandise is the unit value and not the total value of the importation. *Igstaedter & Co.* v. *United States*, 11 Ct. Cust. Appls. 477, T.D. 29570, and cases cited therein.

The trial judge was not in error in holding that mere statements of the witness were not probative evidence to establish usual wholesale quantities, as the term is defined in section 402(f)(5), *supra*. Such

quantities cannot be established by a list of summaries or by arbitrary amounts furnished by witnesses without competent, legal proof. *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T.D. 43237; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T.D. 41436; *United States* v. *Minkus*, 21 CCPA 382, 388-9, T.D. 46912; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129.

Reviewing the three categories of purchasers to whom Boyles Bros. sold the imported merchandise, the contractors, the wholesalers, and the end users, the record substantiates that each in these three categories of purchasers qualified as a purchaser at wholesale, within the definition of section 402(f)(3), *supra*. And since these three categories of purchasers paid prices varying from the list price, the list price being the only constant price, which was paid by the end users, without discount, it can only follow that the list price, without discount, is the only price at which all purchasers could buy, and is, therefore, the proper appraised value. See *American Shipping Co.* v. *United States*, 29 CCPA 250, C.A.D. 198, and *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129, *supra*, in which latter case it was stated and held:

In determining foreign and export values, as defined in section 402(c) and (d), respectively, it is proper to consider only the market values or prices at which merchandise like or similar to that imported is freely offered for sale *to all purchasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade. See *United States* v. *A. W. Faber, Inc.*, 21 C.C.P.A. (Customs) 290, T.D. 46819; *Stone & Downer Co.* v. *United States*, 21 C.C.P.A. (Customs) 479, T.D. 46958; *United States* v. *American Glanzstoff Corp.*, 24 C.C.P.A. (Customs) 35, T.D. 48308. [Italics quoted.]

Defendant's exhibit A, a letter, dated October 9, 1959, signed by the witness, indicates the list price sales policy to the United States:

We are unable to set a uniform discount from list price policy to cover all sales into the United States. This is due to fluctuations in the U.S./Canadian dollar exchange rate and also to variations in our markup over cost to arrive at list prices. We do allow a constant discount to customers such as Boyles Bros. Drilling Company, Salt Lake City, Utah, or Selby Drilling Corp., Boise, Idaho, who, theoretically at least, purchase in sufficient volume and variety to offset the aforementioned fluctuations in exchange and variations in markup over cost.

While the letter antedates the instant importations, it, nevertheless, indicates the list price and discount policy of the seller, both as of such time, and later, to the date of trial, when the witness testified that now the policy was "more constant" in the discount structure. "More constant," of course, is not "constant" and infers a continuing variation in discounts to purchasers, indicating that only the list price still remained constant to all purchasers.

A further consideration of a statement in the letter, "We do allow a constant discount to customers such as Boyles Bros. Drilling Company, Salt Lake City, Utah, or Selby Drilling Corp., Boise, Idaho, who, theoretically at least, purchase in sufficient volume and variety to offset the aforementioned fluctuations in exchange and variations in markup over cost," is deemed necessary.

This portion of the letter may be interpreted to indicate not only a variation from a constant list price, but also a discount to certain favored purchasers only, namely, Boyles Bros. Drilling Co., the importer herein, and Selby Drilling Corp., among others, who did receive the 10 percent discount from list. Obviously, this discount price, claimed herein by the appellant as the basis of dutiable value for the merchandise at bar was not one at which all others could buy, specifically, end users, in the usual wholesale quantities and in the ordinary course of trade. This alone would preclude the importer from a claimed dutiable value of list prices, less 10 percent discount.

In our opinion, the trial judge was correct when he stated, in his decision, "The whole record in this case, in my opinion, is devoid of any substantial evidence which might overcome the presumption of correctness attaching to the appraiser's finding of value."

Accordingly, on the basis of the record and for the reasons hereinbefore set forth, we find as findings of fact:

1. The merchandise involved herein consists of metal machine parts, exported from Canada on or about September 20, 1961.

2. The said merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, at a total value of $756.

3. Such or similar merchandise to that involved herein was freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation at the time of the exportation of the merchandise undergoing appraisement to the United States, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

4. The evidence in the case at bar is insufficient to warrant a finding that the presumption of correctness attending the value found by the appraiser has been overcome, or that the value claimed by the appellant has been established.

We conclude, therefore, as matters of law:

1. Export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis for determination of the value of the merchandise herein.

2. The correct export value of the merchandise at bar is the value returned by the appraiser.

For the reasons stated, judgment of the trial court is affirmed. Judgment will be entered accordingly.