56 CCPA

**F. B. VANDEGRIFT & CO., Inc.,**
Appellant,

v.

The **UNITED STATES,** Appellee.

**Customs Appeal No. 5327.**

United States Court of Customs
and Patent Appeals.

May 22, 1969.

Allerton deC. Tompkins, New York City, attorney of record, for appellant.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Steven R. Sosnov, Bernard J. Babb, New York City, for the United States.

Before RICH, Acting Chief Judge, NEESE, Judge, sitting by designation, and ALMOND and BALDWIN, Judges.

RICH, Acting Chief Judge.

This is an appeal by the importer from a decision and judgment of the Second Division, Appellate Term, United States Customs Court, 60 Cust.Ct. 965, A.R.D. 239, affirming the decision and judgment of the trial judge, 56 Cust.Ct. 715, R.D. 11169, in a reappraisement proceeding.

The merchandise involved comprises 35 rolls of linoleum, 49 inches wide, described as A. c/c Natural Tan No. 2 B 300 (hereinafter Tan), and 10 rolls of another linoleum, described as A. c/c Sea Green 25/2 B 312 (hereinafter Green). The linoleum was imported from Barry, Ostlere & Shepherd, England, the exporter, for the Dodge Cork Co. of Pennsylvania, appellant being the custom-house broker.

Briefly stated, the issue here is whether the duty on the linoleum should

have been appraised on the basis of the price for the linoleum which the exporter charged Dodge Cork Co., or on the basis of certain higher prices which the exporter charged all other wholesalers in the United States.

Many of the most relevant facts forming the background of this appeal appear in Exhibit III, an affidavit of John Houghton, a director of the English exporter. This affidavit describes three appendices to the affidavit relating to the period August 1960 through September 1962, as follows:

The prices set forth in said Appendix A I were the prices at which the Company was willing to sell linoleum to reputable wholesalers in the U.S.A. buying in wholesale quantities of about 50 rolls or more per order, who at their own cost, were willing to carry extensive stocks, provide promotional material, and to advertise. Prices shown in Appendix A II were the prices at which the Company sold and was willing to sell to reputable users in the U.S.A. and small jobbers who customarily bought less than 25 rolls per order, with a small annual purchase volume of linoleum. Total sales in the U.S.A. during the period August 1960 through September 1962 are shown on Appendix B.

## APPENDIX A(I)

| | 73″ wide | 49″ wide |
|---|---|---|
| "A" Brown | 1.91 sq. yd. | 2.54 lineal yd. |
| "A" Colours | 2.05 " " | 2.91 " " |
| "C" Brown | 1.23 " " | 1.57 " " |
| "C" Colours | 1.32 " " | 1.77 " " |

## APPENDIX A(II)

| | 73″ wide | 49″ wide |
|---|---|---|
| "A" Brown | 2.29 sq. yd. | 3.05 lineal yd. |
| "A" Colours | 2.46 " " | 3.31 " " |
| "C" Brown | 1.33 " " | 1.70 " " |
| "C" Colours | 1.43 " " | 1.91 " " |

## APPENDIX B

| | Dodge Cork Co. Inc. | Others |
|---|---|---|
| "A" Quality | 3546 Rolls | 322 Rolls |
| "C" Quality | 151 " | 1 Roll |

The linoleum, forming the subject of this appeal, was appraised on the basis of export value, in accordance with the provisions of section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

The appraised value for the Tan linoleum is $3.05 per lineal yard, less trade and cash discounts of 10% and 5%, less ocean freight and insurance, plus special packing. The importer does not dispute the deductions or the special packing charge, but claims that the value per lineal yard should be $2.54.

The appraised value for the Green linoleum is $3.31 per lineal yard, less 10%, less 5%, less ocean freight and insurance, plus special packing. As before, the importer does not dispute the deductions or the special packing charge, but claims that the value per lineal yard should be $2.91.

## RELEVANT STATUTES

Pertinent portions of the statutes involved are:

Section 402(b) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 943:

(b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 944:

(f) Definitions.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\* \* \* \* \* \*

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

\* \* \* \* \* \*

(5) The term "usual wholesale quantities," in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

## THE TRIAL COURT

At the trial, the importer called Mr. Arthur B. Dodge, Vice-President and Secretary of Dodge Cork Co., who testified that he negotiated the particular prices to be paid by his company conditioned on an understanding to take a certain annual volume, but that there was no written contract with the exporter. Mr. Dodge indicated that the negotiated price was subject to change from time to time. Part of Mr. Dodge's testimony concerning the basis of negotiation was as follows:

Q. How are those prices arrived at? They were arrived at by negotiation, you said. Was it dependent upon an annual dollar volume basis? A. Yes.

Q. During the period in question, what was that dollar volume sale? A. I would have to refer to my notes.

I believe it was two hundred thousand odd dollars.

Q. Was that based on previous years purchases? A. During the period from 1955–56 through 1962, our annual volume ranged between one-hundred thirty thousand to 200,000 odd dollars. I am talking now about c. i. f. purchase prices.

Q. In other words, the only person who could receive the prices which you received were those who did an equivalent amount of business in the previous year? A. That was my understanding.

Q. The prices which you paid for the cork, did they vary at all with the quantity of cork you purchased in an individual order? A. No, because we had an arrangement whereby Barry, Ostlere & Shepherd would manufacture in large quantities knowing that they had a guaranteed sale for the product, and thus could manufacture at the most economical price, and then we would take from them in various shipments. We made up the remainder of our stock on the basis of inventory turnover.

Regarding the size of individual orders, Mr. Dodge stated that "it would be rare" for them to order less than 50 rolls at a time.

Mr. Dodge also indicated that he did not know of any importer in the U.S.A. other than his company who qualified for the prices in Appendix A (I), previously discussed.

The trial court found that appellant had failed to establish that the price offered to Dodge was the price at which the merchandise was freely sold or offered to all purchasers and hence could not provide a basis for the export value as defined in section 402(b), supra. Further, the court pointed out that appellant could not qualify as a "selected purchaser at wholesale," under section 402(f) (1) (B), as that alternative is available only in the absence of sales or offers to all purchasers at wholesale.

The trial court also considered arguments that as the export value according to section 402(b) is determined on the basis of "the usual wholesale quantities," then because the great majority of the sales were for orders of 50 rolls or more per order placed by Dodge Cork that price should prevail. However, the trial court rejected this approach, pointing out that determination of "usual wholesale quantities" according to section 402 (f) (5) applies only when the merchandise is sold "at different prices for different quantities." The trial court found instead that the instant case involved different prices for the *same* quantities, stating:

> Here the evidence establishes that plaintiff's favorable price is not solely a quantity discount. There is nothing to refute—and the appraiser presumably found—that except through new negotiations a person not Dodge, wishing to buy 50 rolls or more could do so only at the less favorable prices. Hence the new definition of "usual wholesale quantity" does plaintiff no good.

## THE APPELLATE TERM

The Appellate Term agreed with the trial judge that the price which Dodge obtained by negotiation was not the price at which the merchandise was freely sold, citing Aceto Chemical Co., Inc. v. United States, 51 CCPA 121, C.A.D. 846; United States v. North American Asbestos Corp., 48 CCPA 153, C.A.D. 783; United States v. Mexican Products Co., 28 CCPA 80, C.A.D. 129.

The Appellate Term also considered the possibility that the exporter would have offered the same price that Dodge received to any importer prepared to give the same terms as Dodge, which might have established that price as the one at which the merchandise was freely offered. However, the court declined to follow that path of reasoning in view of the statutory language "in the absence of sales, offered for sale," stating:

> The statutory language "or [,] in the absence of sales" precludes the court

from considering even *bona fide* offers when, in truth and in fact, there are actual sales. * * *

Rejecting appellant's arguments that the export value should be based on the price per lineal yard charged to purchasers of 50 rolls at a time as the "usual wholesale quantity," the court stated:

> The record herein does not, in our opinion, satisfactorily establish that the so-called 50 roll price based upon past performance amounts to a price which varies by virtue of different quantities. The record, in fact, clearly establishes the contrary. * * *

## OPINION

Appellant here, pointing out that the export value pursuant to section 402(b) is that applicable to sales of "usual wholesale quantities," contends that the usual wholesale quantity was at least 50 rolls based on the orders of Dodge and further argues that the linoleum was "freely sold" to Dodge.

On the point that the linoleum was "freely sold" to Dodge, appellant reminds us that virtually all orders for large quantities of merchandise in international trade are the subject of price negotiation and characterizes the statement of the Appellate Term that "prices arrived at by negotiation or bargaining are not freely sold" as losing sight of reality. Appellant, however, appears to disregard the context within which the just-quoted extract from the Customs Court opinion appears, the context being a consideration of which price is to be chosen when the seller has made actual sales at both negotiated and list prices. Taken in that context, the statement made by the Customs Court appears to be an accurate distillation of the cases it cites and, in particular, of United States v. Mexican Products Co., 28 CCPA 80, C.A.D. 129. Appellant seeks to avoid the relevance of that case, stating:

> The case of United States v. Mexican Products Co., 28 CCPA (Customs) 80, C.A.D. 129, involved the interpretation of an entirely different dutiable value statute ("foreign value") the wording of which bears little relationship to the dutiable value statute now before the court. That case upholds the premise that the words "all purchasers" as used in that old law means all of those who cared to buy such goods in such market.

That statement seems to us to be somewhat sweeping. The court in *Mexican Products* was considering both foreign and *export* value and the opinion specifically sets forth section 402(d) of the Tariff Act of 1930, as follows:

> (d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise *is freely offered for sale to all purchasers* in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Emphasis added.]

Concentrating our attention on the part of that statute which we have emphasized, it is enlightening to compare it with that appearing in the present statute section 402(b), i. e., "at which such or similar merchandise is *freely sold or, in the absence of sales, offered for sale* in the principal market of the country of exportation, in the usual wholesale quantities." It will be seen that the principal difference between the relevant portions of the present statute and that construed in *Mexican Products* lies in the emphasized phrase in the immediately preceding quotation. However, where there are actual sales to various purchasers and section 402(f) (1) (A) of

the present statute is to be applied,[1] then it is seen that the emphasized phrase means "sold or, in the absence of sales, offered * * * to all purchasers at wholesale" and the significant difference between the relevant portions of the present statute and that construed by this court in *Mexican Products* melts away. Moreover, to ascertain the reasoning which brought the language "freely offered for sale * * * to all purchasers" into the Tariff statutes, we have traced the cases of this court back to the 1922 case of Goodyear Tire & Rubber Co. v. United States, 11 CCPA 351, T.D. 39158, from which it appears that section 18 of the Tariff Act of 1909 first introduced the phrase "freely offered for sale *to all purchasers* in said markets, [the principal markets of the country from whence exported] in the usual wholesale quantities." *Goodyear* makes it clear that the effect of this language is to deny the exporting manufacturer the power to set the dutiable value of his product for customs purposes by providing special low prices to a selected importer.

■■ The continued life of the "freely offered for sale * * * to all purchasers" language over a period of 60 years from 1909, continued through various intervening statutes and revisions, to its appearance in the present section 402(b), when read with section 402(f) (1) (A), leads us to believe that considerable weight should be given to the judicial construction history built up over the years. For this reason, we think that *Mexican Products* remains a valid precedent for the purpose for which the trial court cited it, namely to support the position that a price arrived at by bargaining is not the price at which merchandise is freely offered to all purchasers where the merchandise was offered and sold at several different prices or there was one price at which all could buy and lower prices for those with greater bargaining ability. We therefore agree with the Customs Court that the price paid by Dodge for the linoleum does not represent the price at which linoleum was freely sold for purposes of determining export value.

Moreover, even if, *arguendo,* we accepted appellant's argument that the usual wholesale quantity was 50 rolls, there is nothing in the record, apart from Houghton's affidavit of 1964, long after the period when these sales were being made, that even hints that orders of 50 rolls would have been freely sold in 1960–1962 to other distributors at the same price per lineal yard which was extended to Dodge. Indeed, it appears very clear from the testimony of Mr. Dodge that the reason for the low price to Dodge Cork was not the size of each individual order as being at least 50 rolls, but the cumulative annual volume Dodge took. Thus, another distributor, not having the accumulated volume of purchases of Dodge, could not presumably have obtained the same price per lineal yard even if he were to have placed an individual order for a minimum of 50 rolls.

■ Thus, in summary, appellant has failed to establish that the price extended to Dodge was the price at which the goods were freely sold, regardless of the size of individual orders, and therefore the decision and judgment of the Customs Court is affirmed.

Affirmed.

---

1. Section 402(f) (1) (B) is not applicable in a situation where there have been actual sales because, as we stated in Aceto Chemical Co., Inc. v. United States, 51 CCPA 121, C.A.D. 846:

We are also in full agreement with the lower court that we do not reach section 402(f) (1) (B) for the reason that it applies only to a situation in which sales of the American producer are restricted and it *selects* one or more purchasers, restricting its sales to them and not selling or offering its merchandise for sale to all purchasers at wholesale. That situation does not exist here.