## H. REISMAN CORP.
### v.
### UNITED STATES.

C.D. 4759;  Court No. R69/11791.

United States Customs Court.

Aug. 7, 1978.

Barnes, Richardson & Colburn, New York City (Rufus E. Jarman, Jr., and James Caffentzis, New York City, of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Joseph I. Liebman, Trial Atty., New York City), for defendant.

WATSON, Judge:

This is a dispute as to what was the American selling price[1] of vitamin B–12, U.S.P.[2] manufactured and sold by Merck & Company in 1969. There is no dispute that the American selling price of that product should determine the valuation of the seven entries of vitamin B–12, imported from

---

1. Section 402(e), Tariff Act of 1930, as amended:

(e) AMERICAN SELLING PRICE.—For the purposes of this section, the American selling price of any article produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the article in condition packed ready for delivery, at which such article is freely sold or, in the absence of sales, offered for sale for domestic consumption in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such article when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

2. Vitamin B–12 is also referred to as cyanocobalamin crystalline.

England in 1969, which are the subject of this consolidated action.

During 1969 Merck sold vitamin B–12, U.S.P. to wholesale purchasers at prices ranging from $8.00 per gram down to $5.75 per gram in quantities of 50 or more grams. The wholesale purchasers were of two types, those who used the vitamin B–12 in the manufacture of pharmaceutical or food products (users) and those who resold the vitamin B–12 to users, after repackaging it in bulk form (resellers). Both types were purchasers at wholesale within the meaning of section 402(f)(3) of the Tariff Act of 1930, as amended.[3]

The price of $8.00 was the price at which the vitamin B–12 was offered for sale by Merck in its published price list and the price at which approximately 16% of its product was sold to users.

The price of $6.80 per gram, claimed by plaintiff, was the price at which Merck sold the vitamin B–12 to resellers.

The price of $5.75 per gram, alternatively claimed by plaintiff, was that price to users at which the greatest quantity of vitamin B–12 was sold.

The issue in this case can therefore be stated as whether any price other than $8.00 satisfies the statutory requirements of American selling price, which, when the relevant main and definitional portions are combined, requires the price to be one at which the article is freely sold to all purchasers at wholesale, without restrictions as to use.

It would appear that the price of $8.00, simply because it was the highest price, was the only one at which *all* purchasers at wholesale could buy the article and is therefore the only one which satisfies the statutory definition. *F. B. Vandegrift & Co., Inc. v. United States*, 410 F.2d 1259, 56 CCPA 105, C.A.D. 962 (1969); *United States v. Mexican Products Co.*, 28 CCPA 80, C.A.D. 129 (1940); *Border Brokerage Co. v. United States*, 55 Cust.Ct. 748, A.R.D. 194 (1965).

The $6.80 price to resellers, aside from not being a price at which all purchasers at wholesale could buy, was subject to a restriction by Merck that the article must be resold. If used for other purposes the price would revert to $8.00 per gram. This was a restriction on use affecting the value of the merchandise which, under the clear language of section 402(f)(1), prevents the consideration of these sales as "freely sold."[4]

The $5.75 price to users at which the largest quantities were sold was nevertheless not a price at which all purchasers at wholesale could buy and could therefore not be the price which satisfies the statutory requirements.

Plaintiff raises the specter of a situation in which only one out of a thousand sales is made at the putatively controlling list price while the remainder are at a lower price. However, it is not necessary to rely here on any principle beyond that which requires the sales at the "American selling price" to be of some reasonable significance and for

3. Section 402(f)(3):
   (f) DEFINITIONS.—For the purposes of this section—
   \* \* \* \* \* \*
   (3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

4. Section 402(f)(1):
   (f) DEFINITIONS.—For the purposes of this section—

   (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
   (A) to all purchasers at wholesale, or
   (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise, without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

there not to be a gross or shocking imbalance between the practical significance or commercial meaningfulness of the sales at the higher price and the sales at lower prices. It is enough to note that the price of $8.00 is not subject to question on this point.

For the above reasons, plaintiff has failed to disprove the correctness of the appraised value of $8.00 per gram and its claims must be overruled.

Judgment will enter accordingly.