**H. REISMAN CORP., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 78–19.**

United States Court of Customs and Patent Appeals.

May 24, 1979.

Rufus E. Jarman, Jr., New York City (Barnes, Richardson & Colburn, New York City) attys. of record, for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Acting Director, Joseph I. Liebman, New York City, for United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and NEWMAN,* Judge.

---

* The Honorable Bernard Newman, United States Customs Court, sitting by designation.

1. 19 U.S.C. § 1401a(e) [section 402(e), Tariff Act of 1930, as amended] reads as follows:

(e) American selling price.

For the purposes of this section, the American selling price of any article produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the article in condition packed ready for delivery, at which such article is freely sold or, in the absence of sales, offered for sale for domestic consumption in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such article when sold for domestic consumption in the ordinary course of trade and

MILLER, Judge.

This is an appeal from the judgment of the United States Customs Court, 458 F.Supp. 218, 81 Cust.Ct. 22, C.D. 4759 (1978), which sustained the Government's appraisement of vitamin B–12 imported from England in 1969. We affirm.

## Background

Appellant has conceded that the proper statutory basis of appraisement of the importations in question is American selling price [1] and has accepted the Government's selection of vitamin B–12 produced and sold by Merck & Co. ("Merck") during 1969 as the proper domestic product for use in determining the American selling price. Merck sold vitamin B–12 in quantities of 50 or more grams to two groups of wholesale purchasers (users and resellers) at prices ranging from $5.75 per gram to $8.00 per gram. The resellers sold the vitamin under their own label after repackaging it. The users utilized the vitamin in the manufacture of pharmaceuticals and food products.[2] Merck offered the vitamin for resale at a published list price of $8.00 per gram. The resellers received a 15% discount price ($6.80) but, under Merck's agreement with the resellers, the price would be increased back to $8.00 if the resellers used the vitamin. Discounts from the $8.00 list price

in the usual wholesale quantities, at the time of exportation of the imported article.

2. Under 19 U.S.C. § 1401a(f)(3) [section 402(f)(3), Tariff Act of 1930, as amended], both resellers and users are included in the term "purchasers at wholesale," thus:

(f) Definitions.

For purposes of this section—

. . . . .

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

were also given to users when Merck decided to meet competitive offers. The price sold to users ranged from the $8.00 list price, at which 16% of the vitamin was sold, down to $5.75, at which the greatest quantity of the vitamin was sold. The merchandise was apprised at $8.00. Appellant claims that the appraised value should be $5.75 or, in the alternative, $6.80.

### The Customs Court

The Customs Court held that the $8.00 price was the only price at which *all* purchasers at wholesale could buy the vitamin and the only price which satisfied the statutory definition,[3] citing *F. B. Vandegrift & Co. v. United States,* 410 F.2d 1259, 56 CCPA 105, C.A.D. 962 (1969); *United States v. Mexican Products Co.,* 28 CCPA 80, C.A.D. 129 (1940); and *Border Brokerage Co. v. United States,* 55 Cust.Ct. 748, A.R.D. 194 (1965). The court found that the $6.80 price was not a proper American selling price because (1) it was not a price at which *all* purchasers at wholesale could buy and (2) it was also subject to a restriction[4] preventing consideration of the sales as "freely sold" for purposes of 19 U.S.C. § 1401a(f)(1). The court also found that, although the largest quantity was sold at the $5.75 price, such price was not available to all purchasers at wholesale and, thus, could not qualify for the American selling price. Although appellant raised the possibility that one out of a thousand sales could be made at the list price and the rest at a lower price, the court noted that such a situation was not present here because sales

at the $8.00 price were of some reasonable significance and there was no "shocking imbalance between the practical significance or commercial meaningfulness of the sales at the higher price and the sales at lower prices."

### OPINION

■■■ Appellant argues that because the term "purchasers at wholesale" is defined in 19 U.S.C. § 1401a(f)(3) as "purchasers who buy . . . for industrial use *or* for resale" (emphasis added), the American selling price can be determined by sales to either of these groups; that because all sales to resellers were made at $6.80, this price, at most, is the correct price to use. However, this argument ignores the language in 1401a(e) providing for "*the* American selling price" and the language in section 1401a(f)(1) defining "freely sold" as sales made to "*all* purchasers at wholesale." (Emphasis added). Clearly the statutory language does not provide for more than *one* American selling price. "All" modifies the class of "purchasers at wholesale," in which the user and reseller subclasses are included. Therefore, users and resellers must be considered together as one class of purchasers at wholesale in determining *the* American selling price.[5]

Appellant's argument also overlooks the provision in 19 U.S.C. § 1401a(f)(1) that "freely sold" means sales "without restrictions as to the disposition or use of the merchandise by the purchaser." Clearly Merck's price to resellers was subject to a restriction, namely: that the resellers not

---

**3.** 19 U.S.C. § 1401a(f)(1) [section 402(f)(1), Tariff Act of 1930, as amended], which provides:

*(f) Definitions.*
For the purposes of this section—
(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
(A) to all purchasers at wholesale, or
(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price *which fairly reflects the market value* of the merchandise, without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which

or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

**4.** That the vitamin must be resold and not used, as discussed above.

**5.** *See United States v. Mexican Products,* 28 CCPA at 89–90, C.A.D. 129 (1940), where, in discussing sections 1401a(c) and (d), this court said "it is proper to consider . . . prices at which merchandise . . . is freely offered for sale *to all purchasers* (not to the greater number, or to those of a particular class) . . . ." (Emphasis in original.)

588

use the merchandise and, if they do, the price would be increased back to the published list price. Unless this type of restriction comes within one of the three exceptions listed in the statute, *supra* note 3, the $6.80 price cannot be considered the American selling price.

■ Appellant argues that Merck's restriction is within the first exception ("imposed or required by law") [6] because the price structure is in conformance with the Robinson-Patman Act. However, this ignores the clear language of the statute. Because Merck was not violating the law does not mean that Merck's restriction was imposed or required by the law. Robinson-Patman *permits* certain price discriminations, but does not impose such a price structure.

Appellant's argument, that Merck's restriction (increasing the price back up to $8.00 if the merchandise is used by a reseller) was not a "restriction" because, once the price is increased, the reseller becomes a "user," is not persuasive. As we have discussed above, there is but one class involved, namely: "*all* purchasers at wholesale."

■ Therefore, since the $6.80 price was not one at which all purchasers at wholesale could buy and was subject to a restriction, we hold that the Customs Court correctly determined that this price was not the American selling price.

■ Appellant further argues that the price at which the greatest quantity of merchandise was sold ($5.75) is the proper American selling price because it is the easiest and most reasonable standard to use. However, in discussing 19 USC 1401a(f)(1), this court, in *F. B. Vandegrift & Co. v. United States*, 410 F.2d at 1264, 56 CCPA at 111–12, C.A.D. 962, said:

a price arrived at by bargaining is not the price at which merchandise is freely offered to all purchasers where . . . there was one price at which all could buy and lower prices for those with greater bargaining ability.

(Citing *United States v. Mexican Products Co., supra.*) Here it is clear that all the prices below $8.00 were bargained for, because lower prices were given only when a competitive offer was met. *Vandegrift* is controlling, and none of Merck's lower prices, including the $5.75 price, satisfies the statute.[7]

■ Finally, appellant argues that the $8.00 price is the offered price and that the statute permits offered price to be used only when no sales were made, and, since sales were made in this case, the $8.00 price cannot be correct. Assuming that the prices below $8.00 were not bargained for, the $8.00 price must, nevertheless, be used. *Aceto Chemical Co. v. United States*, 51 CCPA 121, 125 C.A.D. 846 (1964). In *Aceto*, this court held that when merchandise is sold at varying prices, resort will be had to the price at which the merchandise was offered to determine the American selling price. The court said (51 CCPA at 126–27):

The sales which we have before us, being at a variety of prices, make it impossible to determine, from them, an American selling price unless we arbitrarily pick the price at which one of such sales were [sic] made. There is not, therefore, *such* a selling price as will serve the purposes of the statute. There is thus an "absence of sales" to establish "*the* price * * * at which such article is *freely* sold * *." . . . We think this is such an absence as Congress intended to bring into effect the expressly stated alternative "or * * * offered for sale * * *." . . . [W]e note that . . . the legislative history of the language under consideration . . . supports [such] construction of the statute. [Emphasis in original.]

6. Appellant does not argue the other two exceptions. However, we note that the second exception (limiting the price at which the merchandise may be resold) is not the same as Merck's restriction, which has to do with *Merck's* price to resellers.

7. We note that appellant has not discussed *Vandegrift*, although it was cited by the Customs Court and by the Government.

Accordingly, we hold that, under either *Vandegrift* or *Aceto*, the Customs Court was correct in its determination that the $8.00 price was the American selling price.

In view of the foregoing, the judgment of the Customs Court is *affirmed.*